UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOHN M. RINALDI,

                                    Plaintiff,

v.

                                                          5:26-cv-0534
                                                          (AJB/CBF)

JOHN DOE #1-10,

                                      Defendants.

---

APPEARANCES:

JOHN M. RINALDI
*Plaintiff, pro se*
6698 Glen Haven Road
Homer, NY 13077

**CARLA B. FREEDMAN**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

### I.     INTRODUCTION

The Clerk has sent to the Court for review pleadings submitted by *pro se* plaintiff John M. Rinaldi ("Plaintiff").  Dkt. Nos. 1, 7, 16.  Plaintiff also seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 3, 12.

### II.     IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt. No. 12.  Upon review, Plaintiff's IFP Application demonstrates economic need.  *See id*.  Therefore, he is granted permission to proceed IFP.[1]

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III.    BACKGROUND

Plaintiff commenced this action on April 3, 2026, by filing a Complaint, Dkt. No. 1, along with an Emergency Ex Parte Motion for a Temporary Restraining Order, Dkt. No. 2; *see also* Dkt. No. 6, and a Motion for Leave to Proceed IFP, Dkt. No. 3.  On April 6, 2026, the Hon. Anthony J. Brindisi, United States District Judge, issued an Order directing administrative closure of the action, finding "the IFP Application submitted by plaintiff was incomplete."  Dkt. No. 5 at 1.[2]  Plaintiff subsequently filed a "First Amended Complaint" (hereinafter, "amended complaint"), Dkt. No. 7, as well as an Emergency Motion for Expedited Review and Immediate Injunctive Relief, Dkt. No. 8; *see also* Dkt. Nos. 9, 10.

On April 7, 2026, Plaintiff filed a completed IFP Application, Dkt. No. 12, and Judge Brindisi directed the Clerk to reopen the action and restore it to the Court's active docket, Dkt. No. 11.  Thereafter, Plaintiff filed a "Master Consolidated Emergency Motion for Immediate Injunctive Relief, Writ of Habeas Corpus, Writ of Mandamus, and Critical Payment."  Dkt. No. 13.  Judge Brindisi issued a Text Order on April 9, 2026, denying Plaintiff's motions for a Preliminary Injunction and Temporary Restraining Order, finding "plaintiff has not met the extremely demanding standard required to warrant emergency relief."  Dkt. No. 14.  Therefore, Judge Brindisi referred Plaintiff's amended complaint, Dkt. No. 7, and IFP application, Dkt. No. 12, to the undersigned.  Dkt. No. 14.

In his amended complaint, Plaintiff lists only "JOHN DOE #1-10" as Defendants.  Dkt. No. 7 at 2.  Plaintiff states his claims "arise under 42 U.S.C. § 1983," and venue is proper in this

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

district "because a substantial part of the events giving rise to the claims occurred in Cortland County, New York." *Id.* Plaintiff identifies himself as "an established public figure" who "operates an all-female production company . . . staffed by A-list Hollywood talent . . . currently in pre-production/production on a major documentary film . . . positioned for Academy Award consideration with a target release in 2026-2027," as well as a "published author of . . . a book series that addresses the significant public issues of childhood trauma and PTSD though the lenses of (1) gun violence; (2) the border crisis . . . ; and (3) war trauma." *Id.* at 3. He states his work "has an international humanitarian scope." *Id.* Additionally, Plaintiff "is a candidate for the Democratic Party nomination for Governor of New York in the June 23, 2026 primary election." *Id.* at 2.

Plaintiff avers on January 2, 2026, he "engaged in protected speech under the First Amendment by acting as a whistleblower and publicly exposing a criminal enterprise operating with the complicity of public officials in Cortland County." *Id.*

> Just eight days later, on or about January 10, 2026, in a clear and direct act of retaliation for his protected speech, state actors, believed to be the John Doe Defendants, seized Plaintiff's personal vehicle, a 2016 Jaguar. This seizure was designed to immobilize Plaintiff and cripple his ability to campaign for Governor.

*Id.* at 2-3. He further asserts "[t]he Defendants' retaliatory seizure of Plaintiff's vehicle on January 10, 2026, was a calculated act to disrupt [Plaintiff's] international work, his book launch, and his entire public platform." *Id.* at 3.

With regard to relief, Plaintiff requests emergency injunctive relief, including orders compelling "the return of Plaintiff's vehicle" and "the release of Plaintiff's son, AMM, and his Chief Operating Officer from state custody," as well as "[a] declaration that the petition signature requirement is unconstitutional as applied to Plaintiff and must be waived; OR, in the

3

alternative, an Order extending the filing deadline . . . ."  *Id*. at 6.  Further, Plaintiff seeks "[a]

declaration that Defendants' actions violated Plaintiff's rights under the First, Fourth, and

Fourteenth Amendments," "[c]ompensatory and punitive damages," "costs and reasonable

attorneys' fees," as well as Orders "permitting expedited discovery to identify the John Doe

Defendants" and "compelling Defendnats to preserve all documents, communications, and

evidence related to the retaliation against Plaintiff."  *Id*.

Plaintiff subsequently filed what appears to be another copy of the amended complaint

with exhibits.  *See generally*, Dkt. No. 16.  Mail concerning Text Orders Dkt. No. 5 and Dkt. No.

14 were returned to the Court as undeliverable.  *See* Dkt. Nos. 17-19.[3]

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis*

complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* §

1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter

jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,

---

[3] Plaintiff must promptly notify the Court of any change of address.  N.D.N.Y. L.R. 10.1(c)(2).
Plaintiff is cautioned that his failure to do so, or to comply with this or other court orders in this
action, may result in sanctions being imposed, including the dismissal of this case.  N.D.N.Y.
L.R. 41.2(b).

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

"[T]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) (explaining, "it is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.") (citations omitted). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)) (additional citation omitted).

"The requirement that the defendant acted under 'color of state law' is jurisdictional." *Bennett v. Bailey*, No. 5:20-CV-903 (GTS/ATB), 2020 WL 5775940, at *2 (N.D.N.Y. Aug. 17,

6

2020) (citations omitted), *report and recommendation adopted*, 2020 WL 5775231 (N.D.N.Y. Sept. 28, 2020); *see also*, *e.g.*, *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (explaining, "private individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law."). "A person acts under color of state law when he or she acts in his or her official capacity, 'clothed with the authority of state law,' or acts under 'pretense' of law by purporting to act with official power." *Bennett*, 2020 WL 5775940, at *2 (citations omitted).

Here, while Plaintiff alleges violations of his First, Fourth, and Fourteenth Amendment rights under the U.S. Constitution, *see* Dkt. No. 7 at 4-5, the amended complaint fails to plausibly plead Plaintiff was deprived of such rights by a person acting *under color of state law*. *See generally*, Dkt. Nos. 1, 7. Plaintiff's amended complaint merely claims, in wholly conclusory fashion, that the John Doe Defendants, "whose names and capacities are . . . unknown to Plaintiff" allegedly "acted under color of state law . . . ." Dkt. No. 7 at 2; *see also* Dkt. No. 7 at 2-3 (alleging "state actors, believed to be the John Doe Defendants, seized Plaintiff's personal vehicle . . . .) (emphasis omitted). Indeed, the pleading does not even specify *which* state or municipality the unknown alleged "state actors" actions are attributable to. *See generally*, *id.*

Under these circumstances, Plaintiff's pleading fails to state a viable § 1983 claim. *See*, *e.g.*, *Kurtz v. Smith*, No. 3:25-CV-0692 (LEK/TWD), 2025 WL 4070710, at *4 (N.D.N.Y. Oct. 3, 2025) (finding the plaintiff's "conclusory allegations that his Eighth and Fourteenth Amendment rights were violated are insufficient to state a claim under Section 1983" where the plaintiff named as defendants "private individuals and an entity that Plaintiff has not alleged to have any connection with any government body or to have acted under color of state law.")

7

(citations omitted), *report and recommendation adopted*, 2026 WL 174048 (N.D.N.Y. Jan. 22, 2026). Accordingly, the undersigned recommends Plaintiff's claims against John Does #1-10 be dismissed.

Moreover, while a litigant in federal court has the right to act as her own counsel, "[a] person who has not been admitted to the practice of law may not represent anybody other than [her]self." *Gammons v. Cody*, No. 1:25-CV-941 (AJB/DJS), 2025 WL 2722411, at *3 (N.D.N.Y. Sept. 2, 2025) (alterations in original) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citation omitted)), *report and recommendation adopted*, 2025 WL 2719776 (N.D.N.Y. Sept. 24, 2025); *accord Johnson v. City of New York*, No. 22-2096, 2023 WL 3607219, at *2 (2d Cir. May 24, 2023). Therefore, insofar as Plaintiff purports to request relief on behalf of his "adult son" and/or "Chief Operating Officer," *see* Dkt. No. 7 at 4, any such claims must be dismissed. *See*, *e.g.*, *Gammons*, 2025 WL 2722411, at *3.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended pleading should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his prior complaints shall be incorporated into any amended pleading by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 12) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 7) be **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: May 21, 2026
Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 5:26-cv-00534-AJB-CBF Document 20 Filed 05/21/26 Page 10 of 116

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1] The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2] Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

Case 5:26-cv-00534-AJB-CBF   Document 20   Filed 05/21/26   Page 12 of 116

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]     Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

Case 5:26-cv-00534-AJB-CBF   Document 20   Filed 05/21/26   Page 13 of 116

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]    Plaintiff did not provide any transcripts.

### C. Discussion [6]

[6]    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

2024 WL 4870495

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

Case 5:26-cv-00534-AJB-CBF   Document 20   Filed 05/21/26   Page 16 of 116

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9] Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

Case 5:26-cv-00534-AJB-CBF   Document 20   Filed 05/21/26   Page 17 of 116

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10] The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,
County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative
Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

2025 WL 247901

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, \*14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, \*5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, \*5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

---

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)

2020 WL 5775940

Case 5:26-cv-00534-AJB-CBF   Document 20   Filed 05/21/26   Page 20 of 116

2020 WL 5775940
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT and Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY and Route 11 Motorsports, Defendants.

5:20-CV-903 (GTS/ATB)
|
Signed 08/17/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs Pro Se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1**  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiffs Andrew S. Bennett and Kristina M. McDonald. (Dkt. No. 1). Plaintiffs have also applied to proceed in forma pauperis ("IFP"). [1] (Dkt. No. 2).

1      Both plaintiffs have signed the complaint and the IFP application and are each representing themselves. Because this court is recommending dismissal for lack of jurisdiction, the court will not require plaintiffs to file separate IFP applications.

**I. IFP Application**
Plaintiffs declare in their IFP application that they are unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiffs are financially eligible for IFP status.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

2020 WL 5775940

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. Complaint

Plaintiffs allege that on March 17, 2020, they purchased a car from the defendant Don Bailey and his company Route 11 Motorsports. (Complaint ("Compl.") ¶ 4 at p.2 (Facts)). Plaintiffs claim that defendant Bailey gave them a "90 Day Warranty" which he is not honoring. (*Id.*) Two days after they purchased the vehicle, the motor began "knocking," and plaintiffs contacted Don Bailey, who has failed to rectify the situation. (*See* Compl. *generally* ¶ 4 at pp.3-6). Plaintiffs seek a full refund of the purchase price of the vehicle and damages for pain and suffering for a total of $10,500. (Compl. ¶¶ 5-6).

## III. Subject Matter Jurisdiction

### A. Legal Standards

**\*2** Federal courts are courts of limited jurisdiction, have only the power that is authorized by Article III of the Constitution, and may only preside over cases that fall within the subject matters delineated by Congress. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). The court must determine whether it has subject matter jurisdiction, and must dismiss a case at any stage of the proceedings if it determines that jurisdiction is lacking. *Cave. v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

In addition, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction sua sponte. *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012). Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 434-35 (2011)).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. Diversity jurisdiction is present when an action is between citizens of different states, and when the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

### B. Application

#### 1. Section 1983

##### a. Legal Standards

In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws. 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply

2020 WL 5775940

beyond the reach of section 1983 " 'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

### b. Application

The defendants in this action are a private individual and what appears to be his car dealership. There is no indication that either of the defendants acts under color of state law. Therefore there is no jurisdiction under section 1983 for the plaintiffs' case. The court realizes that the plaintiffs are pro se and will attempt to determine whether there is any other jurisdictional basis for plaintiffs to bring an action in this court pursuant to federal question or diversity jurisdiction. [2]

[2] A pro se plaintiff's pleadings are interpreted to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### 2. Magnuson-Moss Warranty—Federal Trade Commission Act ("MMWA"), 15 U.S.C. § 2301

### a. Legal Standards

**\*3** The MMWA, is also known as the federal "lemon law." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017). The MMWA "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)). The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with ... a written warranty [or] implied warranty ... [to] bring suit for damages and other legal and equitable relief.' " *Id.* (quoting 15 U.S.C. § 2310(d)(1)). However, the MMWA provides for federal jurisdiction under certain circumstances. *Id.* MMWA claims may be brought in federal court only if the amount in controversy meets or exceeds $50,000 (exclusive of interests and costs), computed on the basis of all claims in the action. *Id.* (citing § 2310(d)(3)(B)).

### b. Application

Plaintiffs in this action allege that the value of the car was $7,000.00 and their "pain and suffering" was worth another $3,500.00 for a total of $10,500.00 in damages. (Compl. ¶¶ 5-6). Thus, even if plaintiffs could make a claim under the MMWA for the failure of defendants to abide by their warranty, and even if they had cited the appropriate statute, plaintiffs cannot meet the jurisdictional amount for bringing an MMWA claim in federal court.

### 3. Contract Claims

### a. Legal Standards

Contract actions are generally state law claims, "governed by state law standards and analyzed using the familiar elements applied in a New York breach of contract action." *Liana Carrier Ltd. v. Pure Biofuels Corporation*, 672 F. App'x 85, 92 (2d Cir. 2016). Contractual obligations, are inherently creatures of state law. *Eugene Iovine, Inc. v. City of New York*, No. 98 Civ. 2767,

Case 5:26-cv-00534-AJB-CBF Document 20 Filed 05/21/26 Page 23 of 116

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775940

1999 WL 4899, at *2 (S.D.N.Y. Jan. 5, 1999) (citing *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115 (1939)). "[A] complaint alleging a violation of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' " *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

### b. Application

Plaintiffs in this case essentially argue that defendant Bailey did not honor his agreement to fix the plaintiffs' car and now does not return their calls or texts. (Compl. ¶ 4 at pp.5-6). As stated above, plaintiffs do not meet the jurisdictional minimum for an MMWA claim. To the extent that plaintiffs are trying to state a contract claim or a simple warranty claim, there is no jurisdiction in federal court for this action, given the facts of plaintiffs' case. While federal courts decide state law claims, those claims are generally either supplemental to a federal claim[3] or brought under diversity jurisdiction. There are no viable federal claims in this action. Thus, supplemental jurisdiction does not apply. Plaintiffs and defendants are citizens of the same state, and the amount in controversy is less than the jurisdictional amount of $75,000.00. Thus, there is no diversity jurisdiction. Because there is no jurisdiction to decide plaintiffs' claims, I must recommend dismissal.

[3]    28 U.S.C. § 1367(a) provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

## IV. Opportunity to Amend

### A. Legal Standards

**\*4**  Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiffs' causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

There is no subject matter jurisdiction for plaintiffs to bring this action in federal court. It does not appear that any amendment or additional pleading will cure the defects in jurisdiction. Because there is no subject matter jurisdiction, the court will recommend dismissing the action without prejudice to plaintiffs bringing their claims in the appropriate state court. However, such dismissal should be without the opportunity to amend since plaintiffs will not be able to cure the deficiency in their complaint with better pleading.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' application to proceed IFP (Dkt. No. 2) is **GRANTED ONLY TO THE EXTENT NECESSARY TO FILE THIS ACTION**, and it is

**RECOMMENDED**, that the plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION, BUT WITHOUT THE OPPORTUNITY TO AMEND**, and it is.

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiffs by regular mail.

2020 WL 5775940

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5775940

---

**End of Document**                                     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2020 WL 5775231

2020 WL 5775231
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT; and Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY; and Route 11 Motorsports, Defendants.

5:20-CV-0903 (GTS/ATB)
|
Signed 09/28/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs, Pro Se, 1137 Roberts Hollow Road, Lowman, New York 14861.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se habeas* breach-of-contract action filed by Andrew S. Bennett and Kristina M. McDonald ("Plaintiffs") against Don Bailey and Route 11 Motorsports ("Defendants") pursuant to 42 U.S.C. § 1983, is United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Plaintiffs' Complaint be dismissed without prejudice for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1915 and that such dismissal should be without prior leave to amend. (Dkt. No. 3.) Plaintiffs have not filed an objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation.[1] Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiffs' Complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 3) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** **without prejudice for lack of subject-matter jurisdiction.**

2020 WL 5775231

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5775231

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas KURTZ, Plaintiff,
v.
SMITH, et al., Defendants.

3:25-cv-0692 (LEK/TWD)
|
Signed 10/03/2025

**Attorneys and Law Firms**

THOMAS KURTZ, Plaintiff, pro se, 23-B-2545, Mid-State Correctional Facility, P.O. Box 2500, Marcy, NY 13403

**REPORT-RECOMMENDATION AND ORDER**

Thérèse Wiley Dancks, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Thomas Kurtz ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff, who is currently confined at Mid-State Correctional Facility, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. Nos. 2, 3, 7. Plaintiff has also requested the appointment of counsel. *See* Dkt. No. 4.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. *See* Dkt. No. 7. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District he is granted permission to proceed IFP. [1]

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. COMPLAINT

Plaintiff states he was an "account holder at the federal credit union Ithaca ... from 1994 to 2018." Dkt. No. 1 at 1. [2] Plaintiff identified four defendants in the list of parties: (1) "A. Brown ... the executive Director assistant for Community Federal credit

2025 WL 4070710

union;" (2) "Smith ... the Teller of the Community Federal credit union;" (3) "Brian, ... the Accountant for Petitioners custom inheritance account;" and (4) "city of Ithaca ... a municipal corporation of the state of new york." *Id*. at 2-3. Additionally, "Grand" and "Community Federal Credit Union" are listed as defendants in the complaint's caption. *See id*. at 1.

2      Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff states the "action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the theft and deprivation of state and Federal law, of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C.A Sections 1331 and 1343." *Id*. at 3. Plaintiff alleges the "defendants ... deprived to plaintiff access to his money in the amount of two-million eight-hundred thousand dollars. And stole from petitioners account ...." *Id*. at 5. He further avers "Defendants also violated (A.T.A.) 18 U.S.C.A. § 2333 as sponsors of Terrorism." *Id*.

 **\*2**  Plaintiff asserts he previously "filed a Article 78 to obtain contract records by the Bank in relation to his accounts ... and a civil claim for the money that came up thefted from his custom enheritence account in 2020." *Id*. at 4. "Defendants Smith, A. Brown, Brian, [and] Grand" were parties to the prior lawsuits in County of Tompkins Supreme Court. *Id*. The instant complaint contains the following factual allegations:

> Defendant Brian had transferred petitioners inheritance account to his name in 2018 in December. On May 15 2014 a treasury check addressed to 1875 State Route 38-B newark valley NY 13811 with petitioners name as benefishary, Smith was the teller at 409 meadow street that day. Petitioner was told he had to wait for the check to clear and he couldn't put the money in a conditional Deposit, Smith made a copy of [Plaintiff]'s NY Drivers license and cashed the check. A. Brown saw the transaction stole some of the money with Brian and Smith in 2020, and 11 U.S.C. § 110(b), violated 18 U.S.C. (2333) (ATA) no-144-222, 130 stat.

*Id*. at 6. Plaintiff requests the following relief: (1) "the court to make the Defendants and or Bank give [Plaintiff his] money back ... and open [his] account;" (2) "an order declaring that the defendants have acted in violation of the united states constitution;" (3) "an injunction compelling defendants to provide or stop: declaring petitioner is at falt;" and (4) "Two-million eight hundred be replaced back into his account and Name." *Id*. at 6-7.

## IV. LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25,

33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*3** In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

# V. ANALYSIS

## A. City of Ithaca

As explained above, Plaintiff identified the "city of Ithaca" New York as a defendant in the list of parties. *See* Dkt. No. 1 at 3. However, the city of Ithaca is not listed in the complaint's caption. *See id.* at 1.

Rule 10(a) of the Federal Rules of Civil Procedure provides, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). As a result, "[a] party not named in the caption of the complaint is not a party to the action." *Neal v. Riley*, No. 9:25-CV-0709 (GTS/MJK), 2025 WL 2370956, at \*4 (N.D.N.Y. Aug. 14, 2025) (citation omitted). Accordingly, insofar as Plaintiff seeks to state a claim against the city of Ithaca, any such claim must be dismissed for failure to state a claim. *See*, *e.g.*, *id.* ("[P]laintiff's allegations against any individual who is not named or identified in the complaint or caption ... are dismissed for failure to state a claim."); *Paul v. Onondaga Cnty. Dist. Attorney's Off.*, No. 5:23-CV-1385 (GTS/TWD), 2024 WL 445701, at \*5 (N.D.N.Y. Feb. 6, 2024), *report and recommendation adopted*, 2024 WL 2835709 (N.D.N.Y. June 4, 2024).

In any event, Plaintiff's complaint lacks any factual allegations against the city of Ithaca. *See* Dkt. No. 1 at 5-6. Therefore, even if the city of Ithaca had been properly listed in the complaint's caption, dismissal would still be required for failure to state claim. *See*, *e.g.*, *Brisman v. Graham*, No. 9:15-CV-0712 (LEK/DEP), 2015 WL 13821095, at \*11 (N.D.N.Y. Aug. 28, 2015) (dismissing claims against defendants named in the plaintiff's complaint where the complaint contained "no factual allegations against them.") (citing *Cipriani v. Buffardi*, No. 9:06-CV-0889 (LEK/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.")).

## B. Smith, A. Brown, Grand, Brian, and Community Federal Credit Union

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. A court may exert subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" and civil actions where there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. §§

1331, 1332. In the absence of a basis for exercising jurisdiction, the case must be dismissed. Fed. R. Civ. P. 12(h)(3); *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 ... may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' ") (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)) (additional citations omitted). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

 **\*4**  Even afforded a liberal construction, Plaintiff's complaint has failed to allege a federal claim such that the Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 may be invoked. *See generally, Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the plaintiff bears the burden of establishing subject matter jurisdiction). It appears Plaintiff seeks to invoke federal question subject matter jurisdiction given his statement the "action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the theft and deprivation of state and Federal law, of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution." Dkt. No. 1 at 3. [3]

> 3        Additionally, the complaint references the anti-terrorism act, 18 U.S.C. § 2333. *See id*. at 5-6.

However, "[t]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)); *see also Bennett v. Bailey*, No. 5:20-CV-0903 (GTS/ATB), 2020 WL 5775940, at *2 (N.D.N.Y. Aug. 17, 2020) ("The requirement that the defendant acted under 'color of state law' is jurisdictional.") (citation omitted), *report and recommendation adopted*, 2020 WL 5775231 (N.D.N.Y. Sept. 28, 2020). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)) (additional citation omitted).

Here, Defendants Smith, A. Brown, Grand, Brian, and Community Federal Credit Union are private individuals and an entity that Plaintiff has not alleged to have any connection with any government body or to have acted under color of state law. *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (explaining, "private individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law."); *Story v. Cent. Intel. Agency*, No. 1:24-CV-00631 (MAD/CFH), 2024 WL 4849844, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "to the extent Plaintiff alleges that civilian conduct violated his constitutional rights, such claims cannot amount to a violation of Plaintiff's constitutional rights because private individuals are not state actors."); *see also Menard v. First Source Fed. Credit Union, No. 6:22-CV-0038 (DNH/TWD), 2022 WL 226763, at *3 (N.D.N.Y. Jan. 26, 2022) (explaining, "courts have repeatedly held that federal credit unions are not state actors.") (citation omitted), *report and recommendation adopted*, 2022 WL 446434 (N.D.N.Y. Feb. 14, 2022). Furthermore, "it is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Accordingly, Plaintiff's conclusory allegations that his Eighth and Fourteenth Amendment rights were violated are insufficient to state a claim under Section 1983.

Moreover, there is nothing in Plaintiff's complaint which would indicate the Court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. To that end, the complaint is completely devoid of any information concerning the Defendants' domicile; therefore, it is not clear whether the parties are "citizens of different States." *See* 28 § 1332(a)(1); *see also*, *e.g.*, *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("28 U.S.C. § 1332 requires complete diversity between all plaintiffs and all defendants ...."); *Rashid v. Sufyan*, No. 1:16-CV-1094 (FJS/DJS), 2016 WL 7077082, at *3 (N.D.N.Y. Nov. 4, 2016) ("For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: (1) physical presence in a state and (2) the intent to make the state a home.") (internal quotations and citations omitted), *report and recommendation adopted*, 2016 WL 7053412 (N.D.N.Y. Dec. 5, 2016). It follows that Plaintiff has failed

to invoke diversity jurisdiction. Accordingly, the Court recommends dismissal of Plaintiff's claims against Smith, A. Brown, Grand, Brian, and Community Federal Credit Union for lack of subject matter jurisdiction.

**\*5** As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Further, where a Court lacks subject matter jurisdiction over a plaintiff's claims, dismissal without prejudice is required. *See Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) (Summary Order). Accordingly, the undersigned recommends granting Plaintiff leave to amend his complaint.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging the Defendant violated a law, he should specifically refer to such law. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. MOTION TO APPOINT COUNSEL

Finally, Plaintiff has filed a motion requesting the appointment of counsel. *See generally*, Dkt. No. 4. Plaintiff states he has written to "a dozen attorneys offices and not one will represent me." *Id.* at 1. Based on the above recommendation to dismiss the complaint in its entirety, the undersigned further recommends Plaintiff's motion for counsel, Dkt. No. 4, be denied as moot. *See*, *e.g.*, *Canfield v. Tartaglia*, No. 6:24-CV-1303 (GTS/TWD), 2025 WL 553468, at \*4 (N.D.N.Y. Feb. 19, 2025), *report and recommendation adopted*, 2025 WL 949845 (N.D.N.Y. Mar. 28, 2025); *Salaam v. Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-0689 (BKS/TWD), 2019 WL 4415624, at \*4 (N.D.N.Y. Sept. 16, 2019).

## VII. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 7) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 4) be **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[4]     If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-

Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*6  IT IS SO ORDERED.**

---

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)
2010 WL 5185047

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]  At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1  TO THE HONORABLE BARBARA S. JONES, United States District Judge,**

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*
Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic*]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    1

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)

2010 WL 5185047

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride*, 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

• In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson* [3] *v. Lee*, No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

[3]    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

2025 WL 4070710

**Cash v. Bernstein, Not Reported in F.Supp.2d (2010)**
2010 WL 5185047

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith*, No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer*, No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang*, No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy*, No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy*, No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds*, 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado*, 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    3

2025 WL 4070710

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)

2010 WL 5185047

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therefore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710

2025 WL 2370956
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Demar NEAL, Plaintiff,

v.

Chairman Allen RILEY, et al., Defendants.

9:25-CV-0709 (GTS/MJK)
|
Signed August 14, 2025

**Attorneys and Law Firms**

DEMAR NEAL, Plaintiff, pro se, Greene County Jail, 80 Bridge Street, P.O. Box 231, Catskill, NY 12414.

### DECISION AND ORDER

GLENN T. SUDDABY, United States District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Demar Neal ("plaintiff") commenced this action, pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA") by filing a complaint. Dkt. No. 1 ("Compl."). Plaintiff, who is presently incarcerated at Greene County Jail, has paid the statutory filing fee, in full.

**II. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c) (2006).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

1

Neal v. Riley, Slip Copy (2025)

2025 WL 2370956

to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the 'defendant unlawfully harmed me' accusation." *Id.*

### B. Summary of the Complaint

**\*2** The following facts are set forth as alleged by plaintiff in his complaint.

On June 14, 2024, plaintiff was in the custody of the Green County Sheriff at Greene C.J. Compl. at 5. Plaintiff informed an officer that his religious preference was Santeria and completed a request for "religious items." *Id.*

On June 21, 2024, plaintiff was informed that his request was not filed. Compl. at 5. Plaintiff filed a grievance related to the issue. *Id.* On June 24, 2024, plaintiff was advised that he would be permitted to have five beaded necklaces, a bracelet, a statue, cascarilla, and rose water. *Id.* at 5. On June 26, 2024, plaintiff received five necklaces and one bracelet. *Id.* at 6.

In June 2024 and July 2024, plaintiff filed grievances related to religious items and services for Santeria practitioners. Compl. at 6-9. Defendant Grievance Coordinator Mandrake Vermilyea ("Vermilyea") denied the grievances citing "safety and security." *Id.* Plaintiff appealed the decisions and defendant Lieutenant Dan Rubino ("Rubino"), the Chief Administrative Officer, accepted the grievances, in part. *Id.* Plaintiff appealed Rubino's decisions to defendants John/Jane Doe, the nine members of the New York State Commission of Correction Citizens Policy and Complaint Review Council ("Doe Defendants/Council"). Compl. at 6-9. Defendant Sheriff Peter J. Kusminsky ("Kusminsky") was informed that "the Council sustains the action taken by the facility administration." *Id.*

In October 2024, plaintiff filed grievances complaining that accommodations were not being made for Santeria services and claiming that defendant Rubino made "arbitrary, capricious, and bias" decisions regarding religious items. Compl. at 10-11. Vermilyea denied the grievances and plaintiff appealed to Rubino. *Id.* Rubino denied the appeals and plaintiff appealed to Doe Defendants/Council. *Id.* Kusminsky was advised that the facility determination was "sustained."

On October 30, 2024, plaintiff had a "manic psychotic mental breakdown." Compl. at 12. Plaintiff was sprayed with a chemical agent and moved to an isolation cell without an opportunity to shower or decontaminate. *Id.* Plaintiff was transferred to segregated housing and an order was issued directing staff to place plaintiff in mechanical restraints anytime he was out of his unit. *Id.* at 13-14.

On October 31, 2024, plaintiff received misbehavior reports charging him with assault, disorderly conduct, disobeying orders, and spitting. Compl. at 15. Plaintiff filed a grievance claiming he did not receive a disciplinary hearing in a timely manner. *Id.* Plaintiff's grievance was denied as untimely. *Id.* Plaintiff was advised that he was "not Ad Seg and staff had 15 business days to render hearing." *Id.* Plaintiff appealed the decision claiming that while he was told he was "not Ad Seg," he was denied outside/fresh air and recreation for thirteen days. Compl. at 15, 30. Vermilyea advised that the grievance would be "forwarded to administration for further consideration" as the "issues fall outside the scope of his authority to investigate." *Id.* at 15. The grievance was not addressed. *Id.* Defendant Superintendent Raymond J. Shanley ("Shanely") Shanley "kept" plaintiff in a single occupancy living unit without any review, renewal or assessment until February 2025. Compl. at 29.

**\*3** From October 31, 2024 until November 27, 2024, Vermilyea, Rubino, and Shanley "were in agree[ment]" that plaintiff should have "non-contact visits" with his family and that plaintiff must be handcuffed during the entirety of the visit. Compl. at 28.

2025 WL 4070710

On November 3, 2024, plaintiff filed a grievance with defendant Correctional Officer Justine Albin ("Albin") complaining of jaw pain due to an "excessive force" incident from "staff [...] slamming his face into a glass window while moving him from 14 cell to 06 cell." Compl. at 13. On November 4, 2024, plaintiff filed a formal complaint accusing defendant Shanley of excessive force. Compl. at 13. Shanley responded and advised that Rubino investigated the complaint and found "insufficient evidence to confirm[.]" *Id.*

On November 12, 2024, plaintiff received notice of a disciplinary hearing. Compl. at 16. On November 15, 2025, the hearing commenced. *Id.* On November 21, 2024, after a disciplinary hearing, the hearing officer found plaintiff guilty of fighting, disorderly conduct, disobeying an order, and spitting. Id. Plaintiff was sanctioned to 60 days loss of visitation privileges and keep lock for 17 hours/day. Compl. at 16. Plaintiff appealed the determination to Shanley. *Id.* Shanley denied the appeal. *Id.*

On November 25, 2024, plaintiff filed a grievance related to "non-contact visits" and being restrained during visits. Compl. at 17. Vermilyea denied the grievance and plaintiff appealed to Rubino. *Id.* Rubino denied the appeal and plaintiff appealed to Doe Defendants/Council. *Id.* Kusminsky was informed that the facility decision was sustained. *Id.*

In November 2024, January 2025, and February 2025, plaintiff filed grievances. Compl. at 18-22. Vermilyea denied the grievances and plaintiff appealed to Rubino. *Id.* Rubino denied the appeals and plaintiff appealed to Doe Defendants/Council. *Id.* Kusminsky was informed that the grievances were denied. *Id.*

Construed liberally [1], the complaint contains the following: (1) First Amendment claims related to the grievance process; (2) First Amendment free exercise and RLUIPA claims; (3) excessive force and condition-of-confinement claims; (4) Fourteenth Amendment due process claims; (5) First Amendment retaliation claims; and (6) state law claims. *See generally* Compl. Plaintiff seeks monetary damages relief and injunctive relief. *See id.* For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

[1]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

### C. Analysis

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

*4 "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). To prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    3

2025 WL 4070710

each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal,* 556 U.S. at 676).

### 1. Rule 10

The complaint contains allegations related to individuals who are not identified in the caption, or list of parties, as defendants. *See* Compl. at 5, 12, 14-16. Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.,* No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim. *See Whitley v. Krinser,* No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong,* No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### 2. Constitutional Claims Related to Grievance Process

Inmates do not have a constitutional right to state grievance programs. *See Shell v. Brzeniak,* 365 F.Supp.2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim.").

Moreover, inmates do not have a due process right to an investigation requested through a grievance. *See DeShaney v. Winnebego Soc. Servs.,* 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally,* No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v. Mazzurca,* 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process right to a thorough investigation of grievances).

Accordingly, plaintiff's First Amendment claims related to the processing of his grievances and complaints are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. First Amendment – Free Exercise/RLUIPA

**\*5** Plaintiff claims that Vermilyea, Rubino, Shanley, Doe Defendants/Council, and Kusminsky violated his First Amendment rights and RLUIPA because they denied him personal religious items and Santeria services. *See* Compl. at 25-26.

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause") (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)).

"In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.' " *Kravitz v. Purcell,* No. 22-764, 2023 WL 8177114, at

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

2025 WL 4070710

Neal v. Riley, Slip Copy (2025)
2025 WL 2370956

*11 (2d Cir. Nov. 27, 2023) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Thus, "an infringement of the free exercise of religion [may be] permissible ... if it is 'reasonably related to legitimate penological interests.' " *Id.* (quoting Benjamin, 905 F.2d at 574). "[T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 87 F.4th at 128 (alterations adopted) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a) (2012). Courts analyzing RLUIPA claims use the First Amendment "sincerely held religious beliefs" standard to determine whether a plaintiff was engaged in a "religious" exercise. *See Sioleski v. McGrain*, No. 10-CV-0665S, 2012 WL 32423, at *2, n. 2 (W.D.N.Y. Jan. 5, 2012) (citations omitted). There is no cognizable private right of action under RLUIPA against state officers sued in their individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013). Only injunctive relief is available under RLUIPA and RLUIPA does not authorize monetary damages against state officers in their official capacities. *Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013); *see also Sossamon v. Texas*, 563 U.S. 277 (2011).

Here, plaintiff does not allege that Vermilyea, Rubino, Shanley, Doe Defendants/Council, or Kusminsky personally denied him the right to possess religious items. Rather, plaintiff describes interactions with officers who are not identified as defendants in the complaint. Moreover, plaintiff claims he was "informed" by officers who are not identified as defendants in the complaint, that his requests were denied. *See* Compl. at 5. The only connection between defendants and the alleged First Amendment violations is plaintiff's grievance related to the issue. In light of *Tangreti*, the Court finds that denying plaintiff's grievances related to his religious rights is not enough to plausibly suggest that defendants were personally involved in the alleged wrongdoing. *See, e.g., Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *Hendricks v. Mallozzi*, No. 9:20-CV-1035 (MAD/ML), 2022 WL 1129887, at *8 (N.D.N.Y. Jan. 14, 2022) (reasoning that the plaintiff's allegations against the defendants related solely to their denial and/or affirmation of the denial were insufficient to plausibly suggest the personal involvement), *report and recommendation adopted*, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022).

*6 Accordingly, plaintiff's free exercise claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the RLUIPA claims, the complaint does not indicate whether defendants are sued in their individual capacity, official capacity, or both. Accordingly, plaintiff's RLUIPA claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**3. Excessive Force**

As an initial matter, the Court notes that it is unclear whether plaintiff's excessive force claims arise under the Eighth or Fourteenth Amendment because it is not clear from the complaint whether plaintiff was confined at Greene C.J. as a convicted and sentenced prisoner or as a pretrial detainee at the time of the alleged events. If plaintiff was convicted at the time of the acts alleged in the complaint, he is protected from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). If plaintiff was confined as a pretrial detainee, his claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use

2025 WL 4070710

Neal v. Riley, Slip Copy (2025)
2025 WL 2370956

of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quotation omitted).

Conversely, in the context of excessive force claims asserted by pretrial detainees, the Supreme Court distinguished between Eighth and Fourteenth Amendment claims in holding that a pretrial detainee alleging that an officer used excessive force against him in violation of the Fourteenth Amendment need not demonstrate that such officer was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, 576 U.S.389 (2015). "[A] pretrial detainee must only show that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim." *Id.* at 396-97. "[I]f the use of force is deliberate – i.e., purposeful and knowing-the pretrial detainee's claim may proceed." *Id.* at 396.

*7 Courts consider a number of factors when determining objective reasonableness, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 396.

Plaintiff alleges that Vermilyea, Rubino, and Shanley failed to respond to his grievance related to being sprayed with a chemical agent and thus, violated his Eighth Amendment/Fourteenth Amendment rights. *See* Compl. at 27. Plaintiff also asserts excessive force claims against Shanley and Albin. *See id.* Under either standard, as presently plead, the excessive force claims are subject to dismissal for the following reasons. First, the allegations related to the use of force are too vague to suggest that plaintiff suffered a constitutional violation. In a conclusory fashion, plaintiff claims he was sprayed with a chemical agent and not permitted to "decontaminate" and that he was "slammed" into a glass window during a cell move. See Compl. at 12-13. Plaintiff does not identify the location of the incidents, or the time frame for the incidents, and does not describe the events that precipitated the incidents including whether plaintiff was given, and failed to respond to officer's orders. Moreover importantly, plaintiff did not identify any individual or officer involved in the incidents. The only connection between Vermilyea, Rubino, Shanley, and Albin and the incident is plaintiff's grievances and complaints. As discussed *supra*, defendants' failure to act on plaintiff's grievance or complaint cannot support an inference of personal involvement.

Accordingly, plaintiff's excessive force claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**4. Conditions of Confinement**

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    6

Neal v. Riley, Slip Copy (2025)
2025 WL 2370956

While the Eighth Amendment " 'does not mandate comfortable prisons,' ... neither does it permit inhumane" treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

 **\*8** "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Such a claim is typically analyzed under a two-pronged standard. The objective prong of the deliberate indifference claim is the same as a convicted prisoner under the Eighth Amendment. *Id.* at 30. To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Second, the pretrial detainee must satisfy the "subjective prong" by showing that the officer acted with deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29. As to the "mens rea" prong, a pretrial detainee must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35; *see Bruno v. City of Schenectady*, 2018 WL 1357377 (2d Cir. 2018).

### a. Visits

Plaintiff alleges that Vermilyea, Rubino, Shanley, the Doe Defendants/Council, and Kusminsky "were in aggreance [sic]" that, for one month, plaintiff should have "non-contact" visits with his family, while handcuffed. Compl. at 28. Plaintiff claims Vermilyea, Albin, Rubino, Doe Defendants/Council, and Kusminsky were personally involved because they denied his grievance related to the issue and "failed to remedy these wrongs." *Id.* Initially, the Court notes that, "the denial of contact visitation does not amount to the infliction of pain at all, and that, even it did, it does not amount to the sort of wanton (and penologically unjustified) infliction of pain[.]" *Hughes v. Butt*, No. 9:06-CV-1462, 2009 WL 3122952, at \*14 (N.D.N.Y. Sept. 28, 2009) (citations omitted). Here, plaintiff does not allege that he is prevented from having visitors. Additionally, as discussed *supra*, plaintiff cannot state a constitutional claim based upon receipt and denial of grievances. Accordingly, plaintiff's claims related to visitation are subject to dismissal. *See Zimmerman v. Burge*, No. 06-CV-0176 (GLS/GHL), 2008 WL 850677, at \*3 (N.D.N.Y. Mar. 28, 2008).

### b. Fresh Air/Recreation

Plaintiff alleges that Shanley, Rubino, and Vermilyea violated his Eighth/Fourteenth Amendment rights when they failed to address his grievance related to being denied outside/fresh air and recreation for 13 days. Compl. at 30. Again, plaintiff's claims related to his lack of fresh air or recreation are based solely upon defendants' decisions related to his grievance on the issue. The complaint is totally devoid of facts suggesting that any named defendant was personally involved in the decision to deny plaintiff fresh air or recreation for thirteen days. For the reasons set forth *supra*, plaintiff's claims related to his lack of fresh air/recreation are dismissed.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                7

Neal v. Riley, Slip Copy (2025)

2025 WL 2370956

### 5. Due Process

Plaintiff claims Shanley confined plaintiff in a "single occupancy living unit," for approximately four months, without any "review, renewals, or assessment." *See* Compl. at 29. To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

*9 The Supreme Court has held that although states may still create liberty interests protected by due process, with respect to convicted prisoners "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

However, a pretrial detainee need not meet such a stringent standard because "[a] detainee's interest in freedom from unjustified infliction of pain and injury is more substantial[.]" *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001); *see also Iqbal*, 490 F.3d at 146, *rev'd on other grounds, Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Th[e Second Circuit] has said that *Sandin* does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process."). "Therefore, in the case of a pretrial detainee, the court must determine whether the condition imposed on the inmate was for a legitimate purpose or for the purpose of punishment." *Myers v. Bucca*, No. 6:15-CV-553 (DNH/ATB), 2015 WL 13401929, at *9 (N.D.N.Y. Dec. 7, 2015) (citations omitted), *report and recommendation adopted by* 2016 WL 165016 (N.D.N.Y. Jan. 14, 2016). "Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Benjamin*, 264 F.3d at 188.

A convicted prisoner or pretrial detainee is entitled to the due process procedures outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). "These procedures include a disciplinary hearing and written notice of the charges at least twenty-four hours in advance of that hearing; the opportunity to present witnesses and documentary evidence before an impartial hearing officer as long as doing so will not jeopardize prison safety and security; and a written statement including evidence relied on by the hearing officer in reaching his or her decisions and the reasons for the disciplinary action." *Myers*, 2015 WL 13401929, at *9 (citing *Wolff*, 418 U.S. at 564-66).

The Due Process Clause requires, among other things, that prison officials periodically review whether an inmate who is confined in Administrative Segregation ("Ad Seg") continues to pose a threat to the facility in order to ensure that Ad Seg is not used a pretext to keep the inmate in the SHU indefinitely. *Proctor v. LeClaire*, 846 F.3d 597, 601 (2d Cir. 2017) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, (1983)). The purpose of periodic reviews "is to ensure that the state's institutional interest justifying the deprivation of the confined inmate's liberty has not grown stale and that prison officials are not using Ad Seg as a pretext for indefinite confinement of an inmate." *Id.* at 609 (quoting *Hewitt*, 459 U.S. at 476-77 & n.9). The Supreme Court has noted that prison officials have "wide latitude in the procedures they employ" when Ad Seg is used to "incapacitate an inmate who 'represents a security threat' " and who remains a security risk throughout his confinement in Ad Seg. *Id.*

*10 Here, while plaintiff claims he was confined to a single cell unit, the complaint contains contradictory allegations related to whether his confinement constituted Ad Seg. Moreover, the complaint is devoid of facts suggesting that plaintiff's confinement was atypical and significant because the complaint lacks facts related to plaintiff's conditions of the segregated confinement compared to ordinary prison conditions. Further, the individual who presided over the disciplinary hearing is not identified as

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.    8

2025 WL 4070710

Neal v. Riley, Slip Copy (2025)
2025 WL 2370956

a defendant in this action. *See* Compl. at 16. Accordingly, the complaint does not suggest that any named defendant confined plaintiff to a single cell unit with an "express intent to punish." Because plaintiff has not sufficiently plead an underlying due process violation, plaintiff attempts to impose liability upon Shanley based upon his affirmation of the hearing officer's determination is also subject to dismissal. *See Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *17 (N.D.N.Y. Sept. 11, 2014).

Accordingly, plaintiff's due process claims related to his single cell confinement are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Retaliation

Plaintiff claims that Shanley and Rubino "blocked contacts and phone numbers" as "retaliatory acts due to the plaintiff's friends and family reaching out to individuals and legal entities[.]" Compl. at 30-31.

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (cleaned up) (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. *Id.* "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line ... defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

Here, plaintiff's retaliation claims are wholly conclusory without any factual support. Initially, the Court notes that plaintiff has failed to plead that he engaged in protected conduct. Even assuming plaintiff's protected conduct stems from his family members reaching out to "individuals" and "legal entities," the complaint lacks facts to plausibly suggest that Shanley and/or Rubino was aware that his family "reached out" to unnamed individuals and unidentified entities or how and why defendants would be motivated to retaliate as a result of that contact. Moreover, plaintiff has not plead that he suffered an "adverse action" that was causally related to any protected activity. To wit, plaintiff does not claim when, how, or for how long his "contacts" were "blocked" and whether he was unable to reach his "contacts" in any manner.

*11 Simply put, plaintiff's retaliation claims are insufficiently plead to survive this Court's sua sponte review. Accordingly, plaintiff's retaliation claims related to his single cell confinement are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. Supervisory Liability

Plaintiff claims defendants Chairman Allen Riley ("Riley"), Commissioner Yolanda Canty ("Canty"), Commissioner Elizabeth Gaynes ("Gaynes"), and Kusminsky were personally involved in constitutional violations because they failed to "adequately supervise the subordinates[.]" Compl. at 26-27.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    9

2025 WL 4070710

Neal v. Riley, Slip Copy (2025)

2025 WL 2370956

"Liability based solely [...] due to a failure to supervise, without more, constitutes precisely the type of vicarious, respondeat superior liability that *Iqbal* and *Tangreti* eliminate." *Myers on behalf of Est. of Myers v. Davenport*, No. 1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *4 (N.D.N.Y. July 29, 2022) (citation omitted). In this case, the complaint is devoid of any allegations which plausibly suggest that defendants directly participated in any alleged constitutional violation or that defendants were present or otherwise involved in any constitutional violation. In the absence of some tangible connection between defendants and the alleged constitutional claims, the claims against defendants must be dismissed. *See O'Brien v. City of Syracuse*, No. 5:22-CV-948 (MAD/TWD), 2023 WL 6066036, at *19 (N.D.N.Y. Sept. 18, 2023) (citing, *inter alia, Robinson v. Graham*, No. 20-CV-1610, 2021 WL 2358415, *3 (N.D.N.Y. June 9, 2021)) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available" after *Tangreti), reconsideration denied*, 2024 WL 4252052 (N.D.N.Y. Sept. 20, 2024)

### 8. State Law Claims

Plaintiff claims that defendants' policies violated the provisions of the HALT Act. District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000).

The alleged violations of the HALT Act are parallel to plaintiff's federal claims for deliberate indifference. Because plaintiff's federal claims for deliberate indifference are being dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

## III. LEAVE TO AMEND

In light of his pro se status, the Court will afford plaintiff the opportunity to file an amended complaint if he desires to proceed with this action. Any such amended complaint, which shall supersede and replace in its entirety the previous complaint filed by plaintiff, must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of plaintiff's amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph. Thus, if plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

## IV. CONCLUSION

 *12 **WHEREFORE**, it is hereby

**ORDERED** that, if plaintiff wishes to proceed with this action, he must file an amended complaint as set forth above within thirty (30) days from the date of the filing of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that, if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e) (2)(B)and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order. In that event, the Clerk is directed to close this case; and it is further

Neal v. Riley, Slip Copy (2025)

2025 WL 2370956

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

## All Citations

Slip Copy, 2025 WL 2370956

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

2024 WL 445701
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Prinell PAUL, Plaintiff,

v.

ONONDAGA COUNTY DISTRICT ATTORNEY'S OFFICE, et al., Defendants.

5:23-cv-01385 (GTS/TWD)
|
Signed February 6, 2024

**Attorneys and Law Firms**

PRINELL PAUL, Plaintiff, pro se, 05002328, Onondaga County Correctional Facility, 6660 E. Seneca Turnpike, Jamesville, NY 13078.

### ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

*1 The Clerk has sent to the Court for review a complaint filed by *pro se* plaintiff Prinell Paul pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims against the Onondaga County District Attorney's Office; William Fitzpatrick, District Attorney ("DA Fitzpatrick"); and Shea Maloy, Assistant District Attorney ("ADA Maloy"). (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 6.) Plaintiff also filed a motion for counsel. (Dkt. No. 3.)

**II. IFP APPLICATION** [1]

[1] On November 6, 2023, Plaintiff's first IFP application was denied and this action was administratively closed. (Dkt. No. 5.) The case was reopened on November 17, 2023, upon receipt of the required filing. (Dkt. Nos. 6, 7.)

Section 1915 of Title 28 of the United States Code ("Section 1915") "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." [2] *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[2] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. PACER Case Locator, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited Jan. 31, 2024). Based on that review, it does not appear that Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Case 5:26-cv-00534-AJB-CBF    Document 20    Filed 05/21/26    Page 47 of 116

2025 WL 4070710

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

Upon review, Plaintiff's IFP application (Dkt. No. 6.), he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. (Dkt. No. 4.) Accordingly, Plaintiff's IFP application is granted. (Dkt. No. 6.)

### III. SUFFICIENCY OF THE COMPLAINT

#### A. Standard of Review

Having found Plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in complain in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**\*2**  Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995)) (other citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

#### B. Summary of the Complaint

2025 WL 4070710

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

The incidents that form the foundation for the complaint occurred while Plaintiff was confined as at Onondaga County Correctional Facility. The following facts are set forth as alleged by Plaintiff in the complaint.

Since July 2, 2023, Plaintiff has been "held unlawfully" as a New York State prisoner at the Onondaga County Correctional Facility after he "copped out on parole" and was sentenced to 14 months for a parole violation. (Dkt. No. 1 at 1;[4] Dkt. No. 6 at 7.[5])

[4]     Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[5]     Plaintiff's complaint consists of four pages handwritten. (Dkt. No. 1.) Plaintiff also submitted a seven-page handwritten "complaint" with his IFP application. (*See* Dkt. No. 6 at 5-12.) At this early juncture, and in deference to Plaintiff's *pro se* status, rather than treat this additional complaint as a superseding pleading, the Court will consider the allegations as a supplement to his original complaint and consider them as a single pleading for purposes of initial review.

 *3 On June 8, 2023, Plaintiff was "denied to go" to his grand jury and ADA Maloy "held" his grand jury without him. *Id.* at 2. Plaintiff's lawyer, Eric Jerscske, also "denied" Plaintiff "his grand jury." (Dkt. No. 6 at 6, 7.) During the grand jury proceeding, ADA Maloy "lied" and "committed perjury" by stating the "gun was operable" even though "they never recovered a gun." (Dkt. No. 1 at 2-3.) *Id.* DA Fitzpatrick "allowed this and did not stop it." *Id.* at 3. Plaintiff was "indicted on a sole possession of a gun charge a C-Felony criminal possession of a weapon in the 2nd degree in front of a Grand Jury." (Dkt. No. 6 at 6.) On June 29, 2023, Plaintiff was arraigned on that charge and has been unlawfully held since June 2, 2023. *Id.* at 7.

Plaintiff sent "multiple dismissal of the case due to insufficient evidence and it was ignored." (Dkt. No. 6 at 8.) Judge Doran has "refused to hear them" and has "denied his motion to review the grand jury minutes." *Id.* Plaintiff claims he is "being unlawfully held on a BS indictment" all because of ADA Maloy lying under oath." *Id.* DA Fitzpatrick has also "ignored" Plaintiff's written complaints. *Id.*

Plaintiff also claims that on June 4, 2023, he was "gang assaulted by 4 to 6 Deputies and Lieutenant Sheriff Deputy Jarvis due to the lie Asst. D.A. Shae Maloy told the Grand Jury and due to the fact I was not informed to go to the Grand Jury or offered." (Dkt. No. 1 a 3.) During this assault, Plaintiff's tooth was "knocked out" and another was "chipped ... all because of this false baseless indictment." (Dkt. No. 6 at 8.)

Plaintiff's "motions and letters to press charges" against the Lieutenant Deputy Sheriff Jarvis who commanded and partook in the gang assault and motion to dismiss charges" has been "denied" and "not at all heard by" ADA Maloy and DA Fitzpatrick. *Id.*

Plaintiff alleges his constitutional rights were violated under the First, Sixth, Eighth, and Fourteenth Amendments. (Dkt. No. 1 at 3.) Plaintiff seeks monetary damages, injunctive relief, declaratory relief, "costs," and any "additional relief this Court deems proper and equitable." (Dkt. No. 6 at 9; Dkt. No. 1 at 4.)

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted).

2025 WL 4070710

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)

2024 WL 445701

## IV. ANALYSIS

### A. Onondaga County District Attorney's Office

Plaintiff names Onondaga County District Attorney's Office as a defendant. (Dkt. No. 1 at 1-2; Dkt. No. 6 at 1-2.) Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued. *See Henry v. Cnty. of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021) (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)). "Courts have routinely applied this rule to conclude that 'the District Attorney's Office is not a suable entity.' " *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 233 (N.D.N.Y. 2023) (quoting *Woodward v. Office of Dist. Att'y*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010)); *see, e.g., Griffith v. Sadri*, No. 07-cv-4824, 2009 WL 2524961, at *8 (E.D.N.Y. Aug. 14, 2009) ("[A] district attorney's office is not a separate legal entity capable of being sued pursuant to § 1983."); *see also Adames v. Cnty. of Suffolk Court*, No. 18-CV-4069, 2019 WL 2107261, at *2 (E.D.N.Y. May 14, 2019) ("Plaintiff's Section 1983 claims against the Jail, the County Court, and DA's Office are not plausible because none of these entities have independent legal identities.").

*4 Accordingly, the Court recommends that Plaintiff's Section 1983 claims against Onondaga County District Attorney's Office be dismissed with prejudice pursuant 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B. DA Fitzpatrick and ADA Malay

Plaintiff seeks to sue DA Fitzpatrick and ADA Malay in their individual and official capacities. (Dkt. No. 1 at 1-2; Dkt. No. 6 at 1-2.)

#### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Id.* at 237 (citations and internal quotation marks omitted).

"Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Kroemer v. Tantillo*, 758 F. App'x 84, 86-87 (2d Cir. 2018). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11-cv-316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted).

"[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citation omitted). Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making of false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial. *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976); *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Here, the allegations against DA Fitzpatrick and ADA Maloy arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff and presenting

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works. 4

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

evidence to a grand jury. *See Ogunkoya v. Monaghan*, 913 F.3d 64, 71 (2d Cir. 2019) ("The decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function.") (citation omitted); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (holding prosecutors and those working under their direction absolutely immune for initiating prosecution and for conduct before a grand jury). Therefore, the prosecutors are entitled to absolute prosecutorial immunity.[6]

[6] Aside from this deficiency, "there is no federal constitutional right to testify before a grand jury, nor, for that matter, is there even a federal right to a grand jury in state criminal proceedings." *Franklin v. Warren Cnty. D.A.'s Off.*, No. 08-CV-0801, 2009 WL 161314, at *2 (N.D.N.Y. Jan. 21, 2009) (*sua sponte* dismissing Fourteenth Amendment claims as not cognizable under Section 1983, "as the factual basis for such claims – the lack of a preliminary hearing or appearance before the grand jury – do not implicate federal rights") (citations omitted). As such, Plaintiff's Section 1983 claims related to the grand jury are not plausible.

**\*5** As both DA Fitzpatrick and ADA Maloy are entitled to prosecutorial immunity, it is recommended the complaint against them be dismissed with prejudice pursuant 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Official Capacity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

"When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.' " *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). "[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity." *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)); *see Rich v. New York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

As both DA Fitzpatrick and ADA Maloy are arms of the state, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice pursuant 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C. Rule 10
Throughout the complaint, Plaintiff refers to various individuals and entities who are not identified in the caption, or list of parties, as defendants. (Dkt. No. 1 at 1, 2, 3; Dkt. No. 6 at 1, 2, 6, 7.) Plaintiff refers to Eric Jerscske, Judge Doran, Lieutenant Sheriff Deputy Jarvis, and "4 to 6" Deputies. (Dkt. No. 1 at 4; Dkt. No. 6 at 6, 7.)

2025 WL 4070710

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

*6 "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *see also Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("The plaintiff refers to John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint. Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint. Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them.").

In this instance, while Plaintiff claims he was "gang assaulted" on June 4, 2023, by Lieutenant Sheriff Deputy Jarvis and "4 to 6" Deputies, whereby his tooth was knocked out and another one was chipped, the aforementioned individuals are not identified as defendants in the caption of the complaint or the list of parties. Thus, the Court will not construe the complaint to assert an excessive force claim against these individuals. *See Gosier v. Paolozzi*, No. 9:23-CV-1135 (GTS/MJK), 2024 WL 340776, at *2 (N.D.N.Y. Jan. 30, 2024). [7]

[7]    Because better pleading could cure this deficiency, the Court recommends granting Plaintiff leave to amend.

For the same reason, the Court will not construe the complaint to include any claims or cause of actions against other private individuals referenced in the body of the complaint, Eric Jerscske or Judge Doran, as they are not identified as defendants in the caption of the complaint or list of parties. [8]

[8]    The Court notes however, insofar as Plaintiff seeks to impose liability on his attorney based on the allegations in the complaint, such claims are not plausible because attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Regardless, Section 1983 claims related to grand jury proceeding are not plausible. *See supra* note 7 and accompanying text. Moreover, insofar as Plaintiff seeks to impose liability on Judge Doran based on the allegations in the complaint, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *See Mireless v. Waco*, 502 U.S. 9, 9-10 (1991). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994); *see also Stump v. Sparkman*, 435 U.S. 349, 357 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."). This immunity applies to state court judges who are sued in federal court pursuant to Section 1983. *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

**D. Injunctive and Declaratory Relief**

As noted, Plaintiff seeks injunctive and declaratory relief. Among other things, Plaintiff asks the Court to issue a "preliminary and permanent injunction ordering" DA Fitzpatrick and ADA Maloy "to drop the indictment and free me immediately" and "cease their unlawful imprisonment against Paul." (Dkt. No. 6 at 9; Dkt. No. 1 at 4.)

However, the Supreme Court has established that habeas relief is the exclusive remedy in federal court for a state prisoner seeking a release from custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that when a prisoner is challenging "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    6

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

\*7 Moreover, notwithstanding the deficiencies identified above, any claims seeking equitable relief likely would be subject to dismissal under abstention principles because it would require the Court to intervene in a state-court criminal proceeding. *See, e.g., Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 73 (2013); *see, e.g., Haskell v. Cuomo,* No. 20-CV-3965, 2021 WL 861802, at \*3 (E.D.N.Y. Mar. 8, 2021) ("[I]nsofar as Plaintiff seeks to have this Court dismiss the indictments against him, this Court cannot intervene in his state criminal proceedings."); *Henderson v. Fludd,* No. 19-CV-2675, 2019 WL 4306376, at \*3 (E.D.N.Y. Sept. 11, 2019) (dismissing the claims "insofar as plaintiff seeks injunctive relief relating to his on-going state court criminal prosecution.").

## V. OPPORTUNITY TO AMEND

Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte,* the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Upon review, and with due regard for Plaintiff's status as a *pro se* litigant, Plaintiff's complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. In light of his *pro se* status, the Court recommends that Plaintiff be afforded the opportunity to file an amended complaint.

Notwithstanding the recommendation that each of the named defendants be dismissed with prejudice, the Court cannot say at this early stage of the litigation that Plaintiff would be unable to amend his complaint to state a viable Section 1983 claim related to the alleged June 4, 2023, gang assault. Thus, the Court recommends providing Plaintiff the opportunity to amend his complaint against the appropriate defendants.

If the District Court adopts this recommendation, and Plaintiff chooses to amend the complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting his claims against each defendant named in the amended complaint. If Plaintiff does not know the name of a defendant, he may refer to the that individual as "John Doe" or "Jane Doe" in both the caption, list of parties, and body of the amended complaint. To the greatest extent possible, Plaintiff's amended complaint should describe all relevant facts supporting his case, including the dates and times, to his best approximation. Plaintiff must also describe how each defendant's acts or omissions violated his rights. The amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. No facts or claims from the original complaint may be incorporated by reference, and piece pleadings are not permitted. Plaintiff must not reassert in his amended complaint claims that the Court has dismissed with prejudice.

## VI. MOTION FOR COUNSEL

Plaintiff has also moved for the appointment of counsel. (Dkt. No. 3.[9]) Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven,* 662 F.2d 162, 176 (2d Cir. 1981). However, the court may request an attorney to represent an indigent party. *See* 28 U.S.C. § 1915(e)(1). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *See Hendricks v. Coughlin,* 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> \*8 [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *See Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

[9] Plaintiff states he has made repeated efforts to obtain a lawyer, and he "attached" the letters to the motion. However, no letters are attached. (Dkt. No. 3.)

At this juncture, the Court has found that the complaint fails to state a claim upon which relief may be granted. Consequently, until plaintiff files an amended complaint that the Court accepts for service, the Court cannot make the necessary assessment of plaintiff's claims under the standards promulgated by *Hendricks*. Therefore, Plaintiff's motion for appointment of counsel is denied without prejudice to renew. Any renewed motion for counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

## VII. CONCLUSION

Accordingly, it is hereby,

**ORDERED** that Plaintiff's IFP application (Dkt. No. 6) is **GRANTED**, [10] and it is further

[10] Plaintiff is reminded that, although the application to proceed in IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** as against defendants Onondaga County District Attorney's Office, William Fitzpatrick, and Shea Maloy pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and it is further

**RECOMMENDED** that Onondaga County District Attorney's Office, William Fitzpatrick, and Shea Maloy be **TERMINATED** as defendants; and it is further

**RECOMMENDED** that Plaintiff be granted leave to file an amended complaint consistent with the foregoing recommendations; and it is further

**RECOMMENDED** that if the District Court adopts this Order and Report-Recommendation, Plaintiff be permitted thirty (30) days from the filing date of the District Court's Order to file an amended complaint and that if Plaintiff fails to file an amended complaint within the time allowed and without requesting an extension of time to do so, this case be **CLOSED** without further order of the Court; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    8

2025 WL 4070710

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)
2024 WL 445701

**\*9** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[11] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 445701

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710

2024 WL 2835709

2024 WL 2835709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Prinell PAUL, Plaintiff,

v.

ONONDAGA COUNTY DISTRICT ATTORNEY'S OFFICE; William
Fitzpatrick, District Atty.; and Shea Maloy, Assis. District Atty., Defendants.

5:23-CV-1385 (GTS/TWD)
|
Signed June 4, 2024

**Attorneys and Law Firms**

PRINELL PAUL, 05002328, Plaintiff, Pro Se, Onondaga County Correctional Facility, 6660 East Seneca Turnpike, Jamesville,
New York 13078.

### DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Prinell Paul ("Plaintiff") against the Onondaga County
District Attorney's Office, District Attorney William Fitzpatrick, and Assistant District Attorney Shea Maloy ("Defendants"),
is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's claims in his
Complaint against the three above-captioned Defendants be dismissed with prejudice and without leave to amend pursuant to
28 U.S.C. § 1915(e)(2)(B) and 1915(A) but that Plaintiff be granted an opportunity to amend his Complaint to assert claims
against individuals other than the three above-captioned Defendants (e.g., one or more John/Jane Doe Defendants). (Dkt. No. 7.)
Plaintiff has not filed an Objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally*,
Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation,
the Court can find no clear error in the Report-Recommendation:[1] Magistrate Judge Dancks employed the proper standards,
accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted
and adopted in its entirety for the reasons stated therein.

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear
error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error"
review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the
recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995)
(Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection
is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 8) is **ACCEPTED** and **ADOPTED** in its
entirety; and it is further

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Case 5:26-cv-00534-AJB-CBF    Document 20    Filed 05/21/26    Page 56 of 116

Paul v. Onondaga County District Attorney's Office, Not Reported in Fed. Supp. (2024)

2024 WL 2835709

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be <u>DISMISSED</u> with prejudice** and without further Order of this Court **UNLESS, within THIRTY (30) DAYS** of entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff wish to file an Amended Complaint in this matter, the Amended Complaint (1) must be a complete pleading that does not reference his original Complaint but will supercede and replace that original Complaint in all respects, and (2) may not assert any claims against Defendants Onondaga County District Attorney's Office, District Attorney William Fitzpatrick, and Assistant District Attorney Shea Maloy, who the Clerk of Court is directed to **TERMINATE** as Defendants in this action; and it is further

**\*2 ORDERED** that, should Plaintiff file a timely Amended Complaint, the Amended Complaint be returned to Magistrate Judge Dancks for further review pursuant to 28 U.S.C. § 1915.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2835709

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

2015 WL 13821095
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jason BRISMAN, Plaintiff,
v.
Harold D. GRAHAM, et al., Defendants.

9:15-cv-0712 (LEK/DEP)
|
Signed 08/28/2015

**Attorneys and Law Firms**

Abby R. Perer, Syracuse University—Office of General Counsel, Gabriel M. Nugent, Barclay Damon LLP—Syracuse Office, Syracuse, NY, for Plaintiff.

Jason Brisman, Attica, NY, pro se.

Denise P. Buckley, Kyle W. Sturgess, Christopher Liberati-Conant, New York State Attorney General, Albany, NY, for Defendants.

**DECISION and ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

*1 The Clerk has sent to the Court for review a Complaint brought by *pro se* Plaintiff Jason Brisman ("Plaintiff"). Dkt. No. 1 ("Complaint"). [1] Plaintiff, who is confined at Southport Correctional Facility and has not paid the filing fee for this action, seeks leave to proceed *in forma pauperis*. Dkt. No. 2 ("IFP Application").

[1]     This is the second civil rights action filed by Plaintiff in the Northern District. See Brisman v. Volpe, No. 9:15-CV-0466 (N.D.N.Y. filed Apr. 17, 2015).

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Id. (citing 28 U.S.C. § 1915(b); Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

[2]     Section 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(g). Based upon the Court's review of Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that Plaintiff has accumulated three strikes for the purposes of 28 U.S.C. § 1915(g).

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    1

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)

2015 WL 13821095

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. IFP App. Plaintiff has also filed the inmate authorization required in the Northern District of New York. Dkt. No. 3. Accordingly, the Court grants Plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, the Court must now consider the sufficiency of the allegations set forth in his Complaint in light of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, § 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both §§ 1915 and 1915A are available to evaluate *pro se* prisoner complaints). Thus, although courts have a duty to show liberality toward *pro se* litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), courts also have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis*.[3]

[3] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," Nelson v. Spitzer, No. 07-CV-1241, 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources," Neitzke v. Williams, 490 U.S. 319, 327 (1989). To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke, 490 U.S. at 325.

*2 When reviewing a complaint, courts may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense," and determine whether the doctrine of res judicata is applicable. Hudson v. Artuz, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### B. Summary of the Complaint

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)

2015 WL 13821095

In his Complaint, Plaintiff asserts claims against forty-five employees of the Department of Corrections and Community Supervision ("DOCCS"), arising out of his confinement at Auburn Correctional Facility ("Auburn C.F."). Compl.[4] The following facts are set forth as alleged in the Complaint.

[4]    All but one of the Defendants are members of the corrections staff at Auburn C.F. Karen Bellamy, DOCCS Director of the Inmate Grievance Program, is also named as a Defendant. Compl. at 12. Fifteen of the Defendants were named as defendants in Plaintiff's prior action; claims against six of these Defendants survived *sua sponte* review and are pending. See Brisman v. Volpe, No. 9:15-CV-0466, Dkt. No. 9, Decision and Order (July 2, 2015).

On February 5, 2015, Plaintiff was assaulted by Correctional Officer Knight and others while in his cell. Compl. ¶ 78. Plaintiff's religious altar was destroyed and he suffered serious injuries. Id. Knight threatened to have Plaintiff murdered if he filed another grievance. Id.

Plaintiff ordered religious tobacco for his Santeria altar in February 2015 and again in April 2015. Id. ¶¶ 74, 75. These items were never received. Id. Religious beads ordered in April 2015 were not received. Id. ¶ 76. Plaintiff filed grievances regarding these packages. Dkt. No. 1-1, Ex. G. Auburn C.F. Deacon Tomandl "did nothing to address the issue." Compl. ¶ 77.

On March 28, 2015, Correctional Officer Arria, Lieutenant Quinn, and Sergeant Volpe escorted Plaintiff to the mental health unit ("MHU") and threatened him with physical harm unless he "talked." Id. ¶¶ 51, 52. While at the MHU, Plaintiff was assaulted by several unidentified staff. Id. ¶ 53. Correctional Officer "Speedy" Doe "threatened to set plaintiff up with a razor and Siboxin drugs." Id.

*3  Counselor Daniels failed to interview Plaintiff in connection with his quarterly transfer review in March 2015. Id. ¶ 90.

From March 16, 2015 to April 3, 2015, corrections officers on Plaintiff's housing unit did not distribute his mail to him. Id. ¶ 59. Volpe told Plaintiff that he was the reason Plaintiff had not received his packages and other mail. Id. ¶ 57. On April 1, 2015, Volpe told Plaintiff that he would have Plaintiff beaten if he continued to file grievances. Id. ¶¶ 54, 56.

On April 8, 2015, Correctional Officer Hsieh improperly opened and read Plaintiff's legal mail. Id. ¶ 61. Correctional Officer Currier delivered mail to Plaintiff the following day; two documents (prison program certificates) were missing from the envelope. Id. ¶¶ 63, 64.

Plaintiff was denied his "medical shower" four times during the period April 6, 2015 to May 4, 2015. Id. ¶¶ 66-69.[5] Correctional Officers Laucker, Carpenter, and McCarthy were responsible for these denials. See id. During this same period, Plaintiff was "forced to live in an unsanitary cell." Id. ¶ 70. Plaintiff complained about his living conditions to Laucker and Carpenter, to no avail. Id.

[5]    Plaintiff was allowed his "medical shower" on March 27, 2015, but complains that the water became very cold and the pressure was "cut off." Compl. ¶ 65.

On April 7, 2015, Plaintiff was involved in two separate incidents in which he was "hawked at" by unidentified corrections staff. Id. ¶¶ 71, 72.[6]

[6]    Plaintiff's grievance defines "Hawked" as, "[t]o clear or attempt to clear the throat by or as if by coughing up phlegm." Dkt. No. 1-1, Ex. F. Plaintiff's grievance relating to the incidents was investigated by Sergeant Calendra and found to be unsubstantiated. Id.

In April 2015, Plaintiff was improperly keep locked by Correctional Officer McCabe as a result of missing the head count. Id. ¶ 80. Plaintiff missed the head count because he was talking with Sergeant Calandra, who was investigating some of Plaintiff's

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW     © 2026  Thomson Reuters. No claim to original U.S. Government Works.

Brisman v. Graham, Not Reported in Fed. Supp. (2015)

2015 WL 13821095

grievances. Id. ¶ 79. McCabe wrote a false misbehavior report against Plaintiff which was served on him by Correctional Officer Lupo. Id. ¶¶ 80-81.

On May 4, 2015, Plaintiff was assaulted by Correctional Officers Lepinskie, Johnston, Osborne, Sergeant Yung, Lieutenant Quinn, and others. Id. ¶ 83. A false misbehavior report was issued for the incident and Plaintiff was denied medical care for his injuries. Id. ¶¶ 83-84. The disciplinary hearing to consider the charges against Plaintiff was not timely commenced, Plaintiff was denied an employee assistant, and did not receive the written disposition in a timely manner. Id. ¶ 85. Following the incident, Plaintiff's cell was searched for contraband by Correctional Officer Knox, who later transported Plaintiff's property to the special housing unit ("SHU"). Id. ¶ 86. When Plaintiff was allowed to view his property a few days later, he discovered that "quite a few items were missing." Id. ¶ 87. Plaintiff discussed his missing property with Correctional Officers Gilpus and Stevens, and Sergeant Connelly, who all agreed that filing a grievance "was the proper action." Id.

On May 11, 2015, Correctional Officer Bell refused to give Plaintiff a receipt for his commissary purchase. Id. ¶ 88.

*4 Plaintiff has not received a response to a New York Freedom of Information Law ("FOIL"), PUB. OFF. §§ 84, et seq., request submitted in May 2015. Id. ¶ 89. Correctional Officer Kennedy is the FOIL officer at Auburn C.F. Id.

From November 2014 through April 2015, Plaintiff served as a representative to the Inmate Liaison Committee ("ILC") at Auburn C.F. Id. ¶ 91. Superintendent Graham "allowed his administration to carry out a campaign of harassment against [P]laintiff." Id.

Based upon the foregoing, and construing the Complaint liberally, Plaintiff claims that he was subjected to excessive force, verbally harassed, and threatened with physical harm; confined under unsanitary conditions; denied proper and adequate medical care; his mail was tampered with; he was denied free exercise of his religion; retaliated against for having filed grievances; and disciplined in violation of his due process rights. Plaintiff seeks an award of money damages against Defendants in their individual and official capacities, as well as declaratory and injunctive relief. Id. ¶¶ 101-07. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

### C. Analysis

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 508 (1990)); see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

The personal involvement of a defendant is a prerequisite for the assessment of liability in a § 1983 action, McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Thus, a plaintiff must demonstrate "a tangible connection between the acts of the defendant and the injuries suffered." Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)).

#### 1. Official Capacity Claims

The Eleventh Amendment protects states against suits brought in federal court. Alabama v. Pugh, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

instrumentalities that are effectively arms of the state, Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006), and, unless waived, bars all money damage claims against state officials acting in their official capacities, Kentucky v. Graham, 473 U.S. 159, 169 (1985); see also Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of inmate plaintiff's claims for damages against individual corrections department employees sued in their official capacities because such claims are considered to be against New York and, therefore, barred by the state's Eleventh Amendment immunity).

**\*5** As a result, Plaintiff's claims for money damages against Defendants in their official capacities are dismissed with prejudice on Eleventh Amendment grounds. See 28 U.S.C. §§ 1915(e)(2)(B)(iii); 1915A(b)(2).

### 2. Eighth Amendment Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. Wilson v. Seiter, 501 U.S. 294, 296-97 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

#### a. Excessive Force and Threats

The Eighth Amendment prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." Blyden v. Mancusi, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks omitted) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Furthermore, "[i]n this Circuit, allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim." Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010); see also Feldman v. Lyons, 852 F. Supp. 2d 274, 280 (N.D.N.Y. 2012) (finding that neither verbal harassment nor "threats amount to a constitutional violation") (citing Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

Here, Plaintiff claims that Defendants used excessive force against him on three separate occasions. Specifically, Plaintiff alleges that Knight and other unidentified correctional officers assaulted him on February 5, 2015. Compl. ¶ 78. Plaintiff also alleges that while he was in the MHU in March 2015, unnamed staff assaulted and threatened him. Id. ¶ 53.[7] A third alleged assault, by Quinn, Yung, Osborne, Johnston, and Lepinskie, occurred on May 4, 2015. Id. ¶¶ 82-83. In addition to these excessive force incidents, Plaintiff alleges that on other occasions he was verbally harassed and threatened with physical harm. Id. ¶¶ 52, 56, 78, 98.

[7]    The only Defendant alleged to have been involved in this incident is a John Doe correctional officer, nicknamed "Speedy." Compl. ¶ 53. Plaintiff is directed to take reasonable steps through discovery in this action to learn the identify of this Defendant so that he may be properly named and served with process.

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, see e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's Eighth Amendment excessive force claims against Knight, "Speedy" Doe, Quinn, Yung, Osborne, Johnston, and Lepinskie survive *sua sponte* review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

With respect to Plaintiff's claims that Quinn threatened him with physical harm unless he "talked," see Compl. ¶ 52, and that Volpe and Knight told Plaintiff that he would have him beaten if he filed more grievances, see id. ¶¶ 56, 78, the Court finds

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                          5

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

that these claims are not cognizable under the Eighth Amendment and, therefore, do not survive *sua sponte* review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

### b. Medical Care

*6 A claim for a violation of a plaintiff's right to receive adequate medical care requires the plaintiff to "show that she or he had a serious medical condition and that it was met with deliberate indifference." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (citation and quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003). [8]

[8]   "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer, 511 U.S. at 837).

Here Plaintiff alleges that he was denied medical care for injuries he suffered on May 4, 2015. See Compl. ¶ 84. However, because Plaintiff has not set forth in the body of his Complaint any factual allegations regarding the nature of his injuries, the inadequacy of the care he received, or the persons personally involved in and responsible for his medical care, [9] this claim does not survive *sua sponte* review and is dismissed without prejudice for failure to state a claim. See 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

[9]   As discussed *infra*, although two medical staff members—Nurse Dugan and Nurse Johnville—are named as Defendants, there are no factual allegations regarding either Defendant in the body of the Complaint.

### c. Conditions of Confinement

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement" for prisoners. Farmer, 511 U.S. at 832. To demonstrate that the conditions of his confinement constitute cruel and unusual punishment a plaintiff must show that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. Id. at 834; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. 294, 298-99 (1991).

The Second Circuit has "long recognized that unsanitary conditions ... can, in egregious circumstances, rise to the level of cruel and unusual punishment." Walker v. Schult, 717 F.3d 119, 127 (2d Cir. 2013). Thus, an inmate's exposure to human waste may, in extreme situations, satisfy the objective element of an Eighth Amendment analysis. See, e.g., Gaston v. Coughlin, 249 F.3d 156, 166 (2d Cir. 2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end."); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

Plaintiff alleges that the cell he was confined in for approximately thirty days was "unsanitary," and that during this period he was denied his "medical shower" on several occasions. Compl. ¶¶ 66-70. Plaintiff complains that the toilet did not flush, the sink was stopped up, the bed frame was bent, the mattress was in disrepair, the wall jacks did not work, and the locker and desk were infested with roaches. Id. ¶ 70. According to Plaintiff, Laucker and Carpenter were aware of the condition of his cell but took no steps to address the situation. Id.

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

*7  Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, see, e.g., Sealed Plaintiff, 537 F.3d at 191, the Court finds that Plaintiff's Eighth Amendment conditions of confinement claims against Laucker and Carpenter survive *sua sponte* review and require a response. [10] This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

[10]  Because the only allegation against McCarthy is that he denied Plaintiff his "medical shower" on May 4, 2015, see Compl. ¶ 69, this claim does not survive *sua sponte* review and is dismissed without prejudice for failure to state a claim.

### 3. First Amendment Claims

#### a. Interference with Mail

The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are "reasonably related to legitimate penological interests." Thornburgh v. Abbott, 490 U.S. 401, 409 (1989) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right—albeit a limited one—to send and receive mail). Legal mail is entitled to greater protection from interference than nonlegal mail. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). [11] "[I]n order for an inmate to state a claim for interference with incoming non-legal mail he must show a pattern and practice of interference that is not justified by any legitimate penological concern." Cancel v. Goord, No. 00 CIV. 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001).

[11]  Interference with legal mail may, under certain conditions, violate an inmate's First Amendment right of access to the courts. See Davis, 320 F.3d at 351. In this case, Plaintiff does not suggest that his mail was in furtherance of any court action, or that the misconduct complained of in any way implicated his access to the courts. Therefore, his Complaint cannot be read to suggest a plausible claim for denial of access to the courts under the First Amendment.

Here, Plaintiff claims that beginning in March 2015, his mail was not delivered to him for approximately three weeks at the direction of Volpe. Compl. ¶¶ 57, 59. Plaintiff also alleges that on April 8, 2015, Hsieh improperly opened and read his legal mail, and that mail delivered to him on April 9, 2015 by Currier had been opened and some of its contents had been removed. Id. ¶¶ 61, 64. [12]

[12]  Plaintiff also states that he ordered religious items in February and April 2015 which he never received. Compl. ¶¶ 74, 75. Plaintiff does not set forth any facts regarding these incidents nor does he claim that any of the Defendants were personally involved in the alleged wrongdoing. These allegations are patently insufficient to state a First Amendment interference with mail claim.

Upon review, and with due regard for Plaintiff's status as a *pro se* litigant, the Court finds that a response to Plaintiff's First Amendment mail interference claim is required from Volpe. However, the Court finds that Plaintiff's claims against Hsieh and Currier do not survive *sua sponte* review because the facts regarding the two incidents complained of do not plausibly suggest that these Defendants were involved in a pattern of ongoing misconduct. See Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975) (finding that a single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge); Cancel, 2001 WL 303713, at *5-6 (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice). As a result these claims are dismissed without prejudice in accordance with 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

#### b. Free Exercise of Religion

**\*8** To succeed on a First Amendment free exercise of religion claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006). The defendants then bear the "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." Id. at 275.

In his Complaint, Plaintiff claims that his First Amendment rights to the free exercise of his religion were violated. See Compl. at 5.[13] Plaintiff identifies himself as an adherent of Santeria, and claims that religious items—tobacco and beads—which he ordered in February and April 2015 were "never received." Id. ¶¶ 74-76. Upon review, because Plaintiff does not identify the Defendants who he contends were personally involved in the alleged misconduct, and because he has not alleged facts which suggest that the mishandling of his goods "substantially burdened" his sincerely held religious beliefs, this claim does not survive *sua sponte* review and is dismissed for failure to state a claim. See 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

13        The pagination corresponds to the page numbers assigned by ECF.

Plaintiff also claims that Knight destroyed his "religious altar" during the alleged assault on February 5, 2015. Compl. ¶ 78. Plaintiff further states that Knight poured coffee over his "religious Santeria rosaries, books, pictures, etc." Id.

Upon review, and with due regard for Plaintiff's status as a *pro se* litigant, the Court finds that his First Amendment free exercise claim against Knight arising from the destruction of his religious property survives *sua sponte* review and requires a response. See Palmer, 468 U.S. at 547 n.13 (Stevens, J., concurring in part and dissenting in part) ("A prisoner's possession of ... personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First Amendment."). This is not a ruling on the merits and the Court expresses no opinion whether this claim can survive a properly filed motion to dismiss or for summary judgment.

#### c. Retaliation

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001) (quoting ACLU v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993)), overruled on other grounds by, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendant took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gill v. Pidlypchak, 389 F.3d 379, 380-81 (2d Cir. 2004). The Second Circuit has long instructed that because virtually any adverse action taken against a prisoner by a prison official can be characterized as a constitutionally proscribed retaliatory act, courts must "examine prisoners' claims of retaliation with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). Analysis of retaliation claims thus requires thoughtful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the factual allegations tending to link the two. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983), overruled on other grounds by, Swierkiewicz, 534 U.S. 506.

**\*9** In his Complaint, Plaintiff alleges that he was retaliated against in violation of his First Amendment rights by virtue of Defendants having threatened him with physical violence. Compl. ¶ 98. Specifically, Plaintiff alleges that Knight threatened

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.          8

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

him with future harm if he filed another grievance. Id. ¶ 78. While Plaintiff states in his Complaint that he was a member of the Auburn C.F. ILC during the relevant period, he does not allege that his ILC membership was a "substantial or motivating factor" in the Defendants' decisions to engage in the misconduct complained. Rather, Plaintiff only states that he was retaliated against as a result of his own grievance filings. Id. ¶ 98.

It is well-settled that "verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." Rosales, 677 F. Supp. 2d at 648 (citing Cabassa v. Smith, No. 08 Civ. 480, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009)); see also Bartley v. Collins, No. 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."). Accordingly, the Court finds that Plaintiff's retaliation claim against Knight does not survive *sua sponte* review and this claim is dismissed without prejudice for failure to state a claim. See 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

In light of Plaintiff's status as a *pro se* litigant, the Court has also considered whether the numerous other acts of misconduct complained of by Plaintiff give rise to one or more claims of retaliation which are cognizable in this action. As noted *supra*, Plaintiff alleges that (i) Deacon Tomandl failed to address issues concerning Plaintiff's purchase of religious items; (ii) Counselor Daniels did not interview him in connection with his quarterly transfer review; (iii) Bell refused to give Plaintiff a receipt for his commissary purchase; (iv) McCabe wrote a false misbehavior report against him; (v) Knox searched Plaintiff's cell and possibly confiscated several items of his personal property; (vi) unidentified corrections staff "hawked" at him; (vii) Calandra failed to properly investigate Plaintiff's grievances; and (viii) Plaintiff did not receive a timely response to his FOIL request. [14] See Compl. ¶¶ 49-92.

[14]    While Plaintiff alleges that several other Defendants threatened him with physical harm (see *supra* Section III.C.(1)), Plaintiff does not set forth any facts which even suggest that his grievance activity was a "substantial or motivating factor" in Defendants' decisions. As a result, these claims do not survive *sua sponte* review and are dismissed without prejudice for failure to state a claim.

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). However, false accusations contained in a misbehavior report can rise to the level of a constitutional violation when they are accompanied by other allegations, such as "retaliation against the prisoner for exercising a constitutional right." Id.

Here, Plaintiff alleges that McCabe issued a false inmate misbehavior report in April 2015 charging Plaintiff with having been absent during the head count. Compl. ¶¶ 80-81. Plaintiff states that he missed the headcount because he was talking with Calandra in connection with Calandra's investigation of certain grievances filed by Plaintiff. Id. ¶ 79. Plaintiff further alleges that McCabe knew that Plaintiff was with Calandra and that he issued the misbehavior report in retaliation for his grievance activity. See id. ¶¶ 80-81. Upon review, the Court finds that this claim survives *sua sponte* review and requires a response from McCabe.

*10 With respect to Plaintiff's remaining claims, however, the Court finds that Plaintiff has not alleged facts which plausibly suggest that he was retaliated against in violation of his First Amendment rights. Thus, even if the Court were to assume that the conduct complained of was sufficiently adverse for purposes of a retaliation claim—and there is no clear indication that it was—Plaintiff has not supported these claims with factual allegations which even suggest that the Defendants who took these actions were aware of Plaintiff's grievance activity or his ILC membership, let alone that his protected conduct was a "substantial or motivating factor" for their conduct.

As a result, these claims are dismissed without prejudice for failure to state a claim upon which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    9

**Kurtz v. Smith, Slip Copy (2025)**

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)

2015 WL 13821095

### 4. Fourteenth Amendment Claims

To successfully state a claim under § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000); Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998); Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996).

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Ortiz, 380 F.3d at 654 (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)). While not the only factor to be considered, the duration of a disciplinary confinement remains significant under Sandin. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000). [15] Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the a typicality standard under Sandin, see Howard, 215 F.3d at 232 n.5, the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." Ortiz, 380 F.3d at 654; Howard, 215 F.3d at 231.

[15]    For example, segregation for a period of thirty days was found by the Supreme Court in Sandin not to impose a significant hardship on an inmate. Sandin, 515 U.S. at 485-86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. Id.

Here, Plaintiff complains that he was improperly disciplined on charges made against him following the excessive force incident in May 2015. Compl. ¶¶ 82-83. Plaintiff states that he was denied an employee assistant, and claims that the hearing was not conducted in a timely manner. Id. ¶ 85. Plaintiff does not identify the hearing officer nor does he provide any facts regarding the sanctions imposed if, in fact, he was found guilty of misbehavior.

Based upon the foregoing, the Court finds that the Complaint does not state a claim for the violation of Plaintiff's Fourteenth Amendment due process rights. As a result, this claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Supervisory Claims Against Superintendent Graham

"It is well settled in this Circuit that personal involvement of defendants in alleged unconstitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citations and internal quotation marks omitted). Because "vicarious liability is inapplicable to ...§ 1983 suits," Iqbal, 556 U.S. at 676, supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Prior to Iqbal, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon, 58 F.3d at 873 (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). [16]

[16]    The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the Warden's personal involvement even under Colon"); see also Hogan v. Fischer, 738 F.3d 509, 519 n.3 (2d Cir. 2013)

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    10

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

> (expressing "no view on the extent to which [Iqbal] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations") (citing Grullon, 720 F.3d at 139). In any event, in this case Plaintiff has failed to adequately allege personal liability even under the Colon standards.

**\*11** Here, Plaintiff does not allege that Superintendent Graham was personally involved in any of the alleged misconduct which gave rise to the claims surviving *sua sponte* review. Rather, Plaintiff alleges only that Graham "allowed his administration to carry out a campaign of harassment against [him]." Compl. ¶ 91. This claim, asserted in wholly conclusory terms, does not give rise to a cognizable claim against Graham for the violation of Plaintiff's constitutional rights.

As a result, Plaintiff's claims against Graham are dismissed without prejudice for failure to state a claim. See 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 6. Claims Against the Remaining Defendants

Correctional Officer Edwards, Correctional Officer Murray, Sergeant Hesse, Recreational Supervisor Porter, Senior Mail Clerk Courtney, Nurse Dugan, Nurse Johnville, IGP Director Bellamy, Captain Chuttey, Correctional Officer Abate, Correctional Officer Fasce, Deputy Superintendent Lamanna, Deputy Superintendent Jones, Correctional Officer Kirkwood, Correctional Officer Reilly, Correctional Officer Roberts, Correctional Officer Shells, Correctional Officer Travis, and Correctional Officer Putnam are named as Defendants in the Complaint. See Compl. ¶¶ 4-48. However, none of these nineteen Defendants are mentioned in the body of the Complaint and, as a result, there are no factual allegations against them. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." Cipriani v. Buffardi, No. 06-CV-889, 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing Gonzalez v. City of New York, No. 97 CIV. 2246, 1998 WL 382055, at \*2 (S.D.N.Y. Jul. 9, 1998)).

Therefore, the Complaint is dismissed without prejudice as against these Defendants. See 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

**IV. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[17] and it is further

[17] Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED**, that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's authorization form (Dkt. No. 3), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED**, that the Clerk provide a copy of Plaintiff's authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that Plaintiff's (i) Eighth Amendment excessive force claims against C.O. Knight, C.O. "Speedy" Doe, Lt. Quinn, Sgt. Yung, C.O. Osborne, C.O. Johnston, and C.O. Lepinskie; (ii) Eighth Amendment condition of confinement claims against C.O. Laucker and C.O. Carpenter; (iii) First Amendment interference with mail claim against Sgt. Volpe; (iv) First Amendment retaliation claim against C.O. McCabe; and (v) First Amendment free exercise claim against C.O. Knight survive the Court's *sua sponte* review pursuant to 28 U.S.C. §§ 1915(e) and 1915A and require a response; and it is further

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.    11

Case 5:26-cv-00534-AJB-CBF    Document 20    Filed 05/21/26    Page 68 of 116

2025 WL 4070710

Brisman v. Graham, Not Reported in Fed. Supp. (2015)
2015 WL 13821095

**ORDERED**, that Plaintiff's § 1983 claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment and are **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2); and it is further

*12 **ORDERED**, that Plaintiff's remaining claims are **DISMISSED without prejudice** for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); [18] and it is further

[18]    Should Plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original Complaint in its entirety, must allege claims of misconduct or wrongdoing against each named Defendant which Plaintiff has a legal right to pursue, and over which the Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED**, that the Clerk shall terminate Supt. Graham, C.O. Edwards, C.O. Calandra, C.O. Murray, Sgt. Hesse, Recreational Supervisor Porter, Deacon Tomandl, Senior Mail Clerk Courtney, Counselor Daniels, Nurse Dugan, Nurse Johnville, C.O. Kennedy, IGP Director Bellamy, Capt. Chuttey, C.O. Abate, C.O. Fasce, Deputy Supt. Lamanna, Deputy Supt. Jones, C.O. Arria, C.O. Currier, C.O. Hsieh, C.O. Bell, C.O. Knox, C.O. Gilpus, C.O. Stevens, C.O. Kirkwood, C.O. Reilly, C.O. Roberts, C.O. Lupo, C.O. Shells, C.O. Travis, C.O. Putnam, C.O. McCarthy, and C.O. Connelly as Defendants in this action; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service on Defendants C.O. Knight, Lt. Quinn, Sgt. Yung, C.O. Osborne, C.O. Johnston, C.O. Lepinskie, C.O. Laucker, C.O. Carpenter, Sgt. Volpe, and C.O. McCabe. The Clerk shall forward a copy of the summons and the Complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that Plaintiff take reasonable steps through discovery in this action to learn the full name of C.O. "Speedy" Doe so that this Defendant may be properly identified and served with process; and it is further

**ORDERED**, that a response to the Complaint shall be filed by Defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

*13 **ORDERED**, that the Clerk shall serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13821095

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)
2007 WL 607341

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail; Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

### DECISION and ORDER

LAWRENCE E. KAHN, U.S. District Judge.

*1 Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New* York, No. 97 CIV. 2246(MGC), 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at *1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

2025 WL 4070710

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)

2007 WL 607341

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)

2007 WL 607341

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710

---

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)

2020 WL 5775940

2020 WL 5775940
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT and Kristina M. McDonald, Plaintiffs,
v.
Don BAILEY and Route 11 Motorsports, Defendants.

5:20-CV-903 (GTS/ATB)
|
Signed 08/17/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs Pro Se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

*1  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiffs Andrew S. Bennett and Kristina M. McDonald. (Dkt. No. 1). Plaintiffs have also applied to proceed in forma pauperis ("IFP").[1] (Dkt. No. 2).

[1]    Both plaintiffs have signed the complaint and the IFP application and are each representing themselves. Because this court is recommending dismissal for lack of jurisdiction, the court will not require plaintiffs to file separate IFP applications.

### I. IFP Application

Plaintiffs declare in their IFP application that they are unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiffs are financially eligible for IFP status.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                                    1

2025 WL 4070710

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775940

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. Complaint

Plaintiffs allege that on March 17, 2020, they purchased a car from the defendant Don Bailey and his company Route 11 Motorsports. (Complaint ("Compl.") ¶ 4 at p.2 (Facts)). Plaintiffs claim that defendant Bailey gave them a "90 Day Warranty" which he is not honoring. (*Id.*) Two days after they purchased the vehicle, the motor began "knocking," and plaintiffs contacted Don Bailey, who has failed to rectify the situation. (*See* Compl. *generally* ¶ 4 at pp.3-6). Plaintiffs seek a full refund of the purchase price of the vehicle and damages for pain and suffering for a total of $10,500. (Compl. ¶¶ 5-6).

## III. Subject Matter Jurisdiction

### A. Legal Standards

*2 Federal courts are courts of limited jurisdiction, have only the power that is authorized by Article III of the Constitution, and may only preside over cases that fall within the subject matters delineated by Congress. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). The court must determine whether it has subject matter jurisdiction, and must dismiss a case at any stage of the proceedings if it determines that jurisdiction is lacking. *Cave. v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

In addition, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction sua sponte. *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012). Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 434-35 (2011)).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction is present when an action is between citizens of different states, and when the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

### B. Application

#### 1. Section 1983

#### a. Legal Standards

In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws. 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

2025 WL 4070710

2020 WL 5775940

beyond the reach of section 1983 " 'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

#### b. Application

The defendants in this action are a private individual and what appears to be his car dealership. There is no indication that either of the defendants acts under color of state law. Therefore there is no jurisdiction under section 1983 for the plaintiffs' case. The court realizes that the plaintiffs are pro se and will attempt to determine whether there is any other jurisdictional basis for plaintiffs to bring an action in this court pursuant to federal question or diversity jurisdiction.[2]

[2]    A pro se plaintiff's pleadings are interpreted to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### 2. Magnuson-Moss Warranty—Federal Trade Commission Act ("MMWA"), 15 U.S.C. § 2301

#### a. Legal Standards

**\*3**  The MMWA, is also known as the federal "lemon law." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017). The MMWA "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)). The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with ... a written warranty [or] implied warranty ... [to] bring suit for damages and other legal and equitable relief.' " *Id.* (quoting 15 U.S.C. § 2310(d)(1)). However, the MMWA provides for federal jurisdiction under certain circumstances. *Id.* MMWA claims may be brought in federal court only if the amount in controversy meets or exceeds $50,000 (exclusive of interests and costs), computed on the basis of all claims in the action. *Id.* (citing § 2310(d)(3)(B)).

#### b. Application

Plaintiffs in this action allege that the value of the car was $7,000.00 and their "pain and suffering" was worth another $3,500.00 for a total of $10,500.00 in damages. (Compl. ¶¶ 5-6). Thus, even if plaintiffs could make a claim under the MMWA for the failure of defendants to abide by their warranty, and even if they had cited the appropriate statute, plaintiffs cannot meet the jurisdictional amount for bringing an MMWA claim in federal court.

### 3. Contract Claims

#### a. Legal Standards

Contract actions are generally state law claims, "governed by state law standards and analyzed using the familiar elements applied in a New York breach of contract action." *Liana Carrier Ltd. v. Pure Biofuels Corporation*, 672 F. App'x 85, 92 (2d Cir. 2016). Contractual obligations, are inherently creatures of state law. *Eugene Iovine, Inc. v. City of New York*, No. 98 Civ. 2767,

2025 WL 4070710

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775940

1999 WL 4899, at *2 (S.D.N.Y. Jan. 5, 1999) (citing *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115 (1939)). "[A] complaint alleging a violation of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' " *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

#### b. Application

Plaintiffs in this case essentially argue that defendant Bailey did not honor his agreement to fix the plaintiffs' car and now does not return their calls or texts. (Compl. ¶ 4 at pp.5-6). As stated above, plaintiffs do not meet the jurisdictional minimum for an MMWA claim. To the extent that plaintiffs are trying to state a contract claim or a simple warranty claim, there is no jurisdiction in federal court for this action, given the facts of plaintiffs' case. While federal courts decide state law claims, those claims are generally either supplemental to a federal claim [3] or brought under diversity jurisdiction. There are no viable federal claims in this action. Thus, supplemental jurisdiction does not apply. Plaintiffs and defendants are citizens of the same state, and the amount in controversy is less than the jurisdictional amount of $75,000.00. Thus, there is no diversity jurisdiction. Because there is no jurisdiction to decide plaintiffs' claims, I must recommend dismissal.

[3]    28 U.S.C. § 1367(a) provides that
    in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

#### IV. Opportunity to Amend

##### A. Legal Standards

*4   Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiffs' causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

##### B. Application

There is no subject matter jurisdiction for plaintiffs to bring this action in federal court. It does not appear that any amendment or additional pleading will cure the defects in jurisdiction. Because there is no subject matter jurisdiction, the court will recommend dismissing the action without prejudice to plaintiffs bringing their claims in the appropriate state court. However, such dismissal should be without the opportunity to amend since plaintiffs will not be able to cure the deficiency in their complaint with better pleading.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' application to proceed IFP (Dkt. No. 2) is **GRANTED ONLY TO THE EXTENT NECESSARY TO FILE THIS ACTION**, and it is

**RECOMMENDED**, that the plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION, BUT WITHOUT THE OPPORTUNITY TO AMEND**, and it is.

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiffs by regular mail.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.          4

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775940

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

#### All Citations

Not Reported in Fed. Supp., 2020 WL 5775940

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.          5

2025 WL 4070710

2020 WL 5775231
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT; and Kristina M. McDonald, Plaintiffs,
v.
Don BAILEY; and Route 11 Motorsports, Defendants.

5:20-CV-0903 (GTS/ATB)
|
Signed 09/28/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs, Pro Se, 1137 Roberts Hollow Road, Lowman, New York 14861.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se habeas* breach-of-contract action filed by Andrew S. Bennett and Kristina M. McDonald ("Plaintiffs") against Don Bailey and Route 11 Motorsports ("Defendants") pursuant to 42 U.S.C. § 1983, is United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Plaintiffs' Complaint be dismissed without prejudice for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1915 and that such dismissal should be without prior leave to amend. (Dkt. No. 3.) Plaintiffs have not filed an objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiffs' Complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

[1] When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 3) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    1

Bennett v. Bailey, Not Reported in Fed. Supp. (2020)
2020 WL 5775231

## All Citations

Not Reported in Fed. Supp., 2020 WL 5775231

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    2

2025 WL 4070710

Story v. Central Intelligence Agency, Slip Copy (2024)

2024 WL 4849844

2024 WL 4849844
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Brandon STORY, Plaintiff,
v.
CENTRAL INTELLIGENCE AGENCY, Defendant.

1:24-CV-00631 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MICHAEL BRANDON STORY, 56 Shelterwood Rd, Apt. A, East Greenbush, New York 12061, Plaintiff Pro Se.

## ORDER

Mae A. D'Agostino, United States District Judge:

*1  On May 7, 2024, *pro se* Plaintiff Michael Brandon Story ("Plaintiff") filed a complaint alleging wrongdoing by Defendant Central Intelligence Agency ("CIA" or "Defendant"), *see* Dkt. No. 1, and a motion for leave to proceed *in forma pauperis* ("IFP"), Dkt. No. 2.[1]  Specifically, Plaintiff states that Defendant "[e]ncroached from civilians reading data from global satellite system." Dkt. No. 1 at 4. Plaintiff indicates that the basis for this Court's jurisdiction is a Federal Question and, in reference to "the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case," Plaintiff states, "[e]ntrapment under privacy law article 3." *Id.* at 3.

[1]   The following cases, filed by Plaintiff, have been deemed related by the Court: 1:24-CV-00623, 1:24-CV-00625, 1:24-CV-00626, 1:24-CV-00627, 1:24-CV-00632, and 1:24-CV-01346. *See* Dkt. No. 5; *Story v. United States*, 1:24-CV-01346, at Dkt. No. 5.

On October 10, 2024, Magistrate Judge Hummel issued a Report-Recommendation & Order granting Plaintiff leave to proceed IFP and recommending that Plaintiff's complaint be dismissed without prejudice and without leave to amend, pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* Dkt. No. 6.

Plaintiff has not filed any objections to the Report-Recommendation & Order. When a party declines to file an objection, the Court reviews a recommendation for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because Plaintiff has not filed an objection, the Court will review the recommendation for clear error.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has stated that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely "because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F. 2d 90, 95 (2d Cir. 1983)).

Case 5:26-cv-00534-AJB-CBF   Document 20   Filed 05/21/26   Page 77 of 116

2025 WL 4070710

Story v. Central Intelligence Agency, Slip Copy (2024)

2024 WL 4849844

The Court finds no clear error in Magistrate Judge Hummel's Report-Recommendation & Order. Dismissal is appropriate because, even given special solicitude, Plaintiff's claims are frivolous and the complaint does not comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Magistrate Judge Hummel correctly determined that Plaintiff's complaint fails to meet the requirements of Rules 8 and 10 because "[i]t does not set forth claims in numbered paragraphs and, more significantly, does not set forth claims with sufficient detail to give defendant notice of the claim against it." *See* Dkt. No. 6 at 6 (citations omitted). Indeed, "[t]he complaint provides no detail, context, or time frame for the alleged surveillance." *Id.* Neither has Plaintiff provided a " 'short and plaint statement of the grounds for the court's jurisdiction.' " *Id.* (quotations omitted).

*2 The Court finds no clear error in the recommendation that Plaintiffs claims be dismissed because they are "frivolous or malicious." *Id.* at 11. Plaintiff's allegations of encroachment due to the " 'reading [of] data' from a 'global satellite system' by the CIA or the Federal Bureau of Investigation [(FBI)] or 'civilians' 'rise[s] to the level of irrational or the wholly incredible.' " *Id.* at 11 (quoting *Quarles v. Murphy*, No. 17-CV-76, 2017 WL 5558644 (E.D.N.Y. Mar. 6, 2017) (holding that the plaintiff's claims of FBI surveillance, including allegations of audio and video surveillance, "rise to the level of the irrational or the wholly incredible")).

Magistrate Judge Hummel is also correct that Plaintiff does not articulate how Defendant was personally involved in any alleged violation of law, how the alleged conduct was committed, how he was harmed, or how such alleged conduct relates to any claim for legal relief. *See* Dkt. No. 6 at 6-7. Even construing the complaint to state a claim for unreasonable searches pursuant to the Fourth Amendment—despite lack of citation or reference thereto—such a claim would fail because Plaintiff does not contend that he is being surveilled in his home, and "[t]here is no reasonable expectation of privacy in public areas and '[a] person travelling [sic] in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.' " *Id.* at 7 (quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983)). Additionally, the Court finds no clear error on Magistrate Judge Hummel's conclusion that, to the extent Plaintiff alleges that the CIA "entrapped" him, entrapment is an affirmative defense under New York State penal law and " 'cannot be a basis for a section 1983 claim.' " *Id.* at 7-8 (quoting *Almonte v. Florio*, No. 02 CIV. 6722, 2004 WL 60306, at *3 (S.D.N.Y. Jan. 13, 2004)). And, to the extent Plaintiff alleges that civilian conduct violated his constitutional rights, such claims cannot amount to a violation of Plaintiff's constitutional rights because private individuals are not state actors. *See id.* at 8. Neither does the Court find clear error in the conclusion that Plaintiff could not state a claim under the United Nations Declaration of Human Rights or the General Data Protection Regulations, for the reasons articulated by Magistrate Judge Hummel. *See id.* at 9.

Moreover, even if the Court could ascertain the basis of Plaintiff's claims, the Court finds no clear error in Magistrate Judge Hummel's recommendation that the complaint be dismissed because claims against the CIA, which is an agency of the United States government, are subject to sovereign immunity absent a waiver. *See id.* at 9-11. Plaintiff has the burden of demonstrating that sovereign immunity has been waived, *see Cox v. New York State*, No. 1:23-CV-0060, 2023 WL 2770368, *5 (N.D.N.Y. Apr. 4, 2023), *report and recommendation adopted*, No. 1:23-CV-00060, 2023 WL 6862505 (N.D.N.Y. Oct. 18, 2023), and the complaint is devoid of any allegations indicating such waiver, *see* Dkt. No. 1.

Finally, the Court finds no clear error in Magistrate Judge Hummel's conclusion that, although leave to amend would normally be appropriate, leave to amend should not be granted here because amendment would be futile. Dkt. No. 6 at 11-14. Indeed, because the problems that plague the complaint are "substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to re-plead would be futile and should be denied." *Id.* at 12 (quoting *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)) (internal quotation marks omitted). "When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are 'substantive rather than formal and [ ] leave to amend would be futile.' " *Mahmood v. United States Gov't*, No. 1:20-CV-207, 2020 WL 3965125, *2 (N.D.N.Y. Mar. 17, 2020), *report and recommendation adopted sub nom. Mahmood v. United States*, No. 1:20-CV-207, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (quoting *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013) (summary order)). Accordingly, finding no clear error, the Court adopts the recommendation that this matter be dismissed without prejudice[2] and without opportunity to amend.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.                              2

2025 WL 4070710

Story v. Central Intelligence Agency, Slip Copy (2024)

2024 WL 4849844

2      "A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.' " *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, *2 (2d Cir. Sept. 15, 2022) (summary order) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016)).

 **\*3**  After carefully reviewing the Report-Recommendation & Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation & Order (Dkt. No. 6) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4849844

End of Document                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)

2022 WL 226763

2022 WL 226763
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis D. MENARD, Plaintiff,

v.

FIRST SOURCE FEDERAL CREDIT UNION, et al., Defendants.

6:22-CV-0038 (DNH/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCIS D. MENARD, Plaintiff, pro se, 407 West St. Apt D, Rome, NY 13440.

### REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

*1 Francis D. Menard ("Plaintiff"), proceeding *pro se*, filed a complaint against First Source Federal Credit Union and Debarah A. Grogan ("Grogan") (together, "Defendants"). (Dkt. No. 1.) Currently before the Court is Plaintiff's application to proceed *in forma pauperis* ("IFP Application"). (Dkt. No. 2.)

**I. IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's IFP Application (Dkt. No. 2), the Court finds Plaintiff meets this standard. Therefore, his IFP Application is granted. [1]

[1] Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**II. SUFFICIENCY OF COMPLAINT**

**A. Legal Standards**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

**Kurtz v. Smith, Slip Copy (2025)**

2025 WL 4070710

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)

2022 WL 226763

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Where a plaintiff is proceeding *pro se*, the court construes his pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).[2]

[2]  Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

**\*2** Moreover, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction *sua sponte. Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012)). "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.*; *see also* Fed. R. Civ. P. 12(h)(3).

### B. Summary of the Complaint

Plaintiff claims First Source Federal Credit Union (Main Branch), located at 4451 Commercial Drive, New Hartford, New York, has violated his right to "file" "grievances" while Grogan, the Branch Manager of First Source Federal Credit Union, located at 1822 Black River Bldg. Rome, New York, "barred" Plaintiff from "all bank's properties so I can't get my SSI income." (Dkt. No. 1 at 2.[3]) Plaintiff claims Defendants are "trying to ste[al his] federal income." *Id.* Specifically, Defendants "always" give Plaintiff a "problem" "getting [his] SSI money out of his bank account." *Id.* at 3. This bank is "known to steal money/embezzle SSI money." *Id.* Defendants "put a freeze on Plaintiff's bank card just to harass Plaintiff." *Id.* "Now Plaintiff can't see what is in his account." *Id.*

[3]  Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

He further alleges Defendants "only approved" Plaintiff to purchase a "lemon vehicle." *Id.* at 2.[4] While not entirely clear, it appears the "lemon vehicle" at issue is a 2004 truck that "caught on fire" two weeks after Plaintiff purchased it. *Id.* Defendants "refused" to fix the truck because they "want to steal federal income." *Id.* Defendants "love to violate everyone's rights and retaliate" which causes Plaintiff "pain and suffering." *Id.* at 3. Defendants "never had the vehicle inspected" because they knew it was a "lemon" and a "deathtrap." *Id.*

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    2

2025 WL 4070710

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)
2022 WL 226763

4    Apparently, Defendants "denied" the "first vehicle" because "they knew [Plaintiff] was trying to start his own business." (Dkt. No. 1 at 2-3.)

As relief, Plaintiff wants Grogan to be "removed from her job indefinitely" and for all First Source Federal Credit Unions "to be shut down indefinitely for approving the sale of a lemon/deathtrap." *Id.* at 4. He asks for $35 million for "pain and suffering" and for Defendants "to pay off the vehicle that is a lemon and a deathtrap." *Id.* Lastly, he wants Defendants "to pay to fix the truck so it is not a deathtrap and to charge both Defendants with federal charges for steeling [sic] SSI money." *Id.*

### C. Subject Matter Jurisdiction

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte.*

The basic statutory grants of subject matter jurisdiction are set forth in 28 U.S.C. §§ 1331 and 1332. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Section 1332 provides that federal court subject matter jurisdiction may be established where there is a diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. § 1332.

\*3  In this case, it appears Plaintiff seeks to invoke this Court's subject matter jurisdiction pursuant to § 1331 given that he utilized a form civil rights compliant pursuant to 42 U.S.C. § 1983. "A plaintiff properly invokes § 1331 jurisdiction when he pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*, 546 U.S. at 513. A claim alleging federal-question jurisdiction "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* at 513 n.10. As noted, although courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers," *pro se* litigants must establish subject matter jurisdiction. *See, e.g., Simmonds v. Longo*, No. 6:19-CV-1319 (DNH/ML), 2020 WL 1644206, at \*4 (N.D.N.Y. Mar. 11, 2020) (recommending dismissal of *pro se* complaint for lack of subject matter jurisdiction), *report-recommendation adopted*, 2020 WL 1643394 (N.D.N.Y. Apr. 2, 2020).

Here, even given a liberal construction, Plaintiff's complaint does not allege a federal claim such that the Court's federal question subject matter jurisdiction may be invoked. Rather, it appears Plaintiff's claims stem from his private banking relationship with Defendants. Despite Plaintiff's citation of the Section 1983, his allegations do not present a colorable federal claim for the reasons that follow.

"To state a valid claim under [Section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, Section 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Bennett v. Bailey*, No. 5:20-CV-0903 (GTS/ATB), 2020 WL 5775940, at \*2 (N.D.N.Y. Aug. 17, 2020), *report-recommendation adopted*, 2020 WL 5775231 (N.D.N.Y. Sept. 28, 2020). Private conduct is simply beyond the reach of Section 1983 " 'no matter how discriminatory or wrongful' that conduct may be." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Under extremely limited circumstances not alleged here, private actors may be held liable under Section 1983. *See White v. Monarch Pharmaceuticals, Inc.*, No. 08-CV-0430, 2009 WL 3068217, at \*1 (2d Cir. Sept. 28, 2009); *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 838-42,

**WESTLAW**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                                  3

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)
2022 WL 226763

(1982); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam); *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

Here, Defendants are a private individual and entity who are not alleged to have any connection with any government body and have not acted under color of state law. *See Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) ("private individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law"); *Barroga-Hayes v. Susan D. Settenbrino, P.C.*, No. 10-CV-5298, 2012 WL 1118194, at *9 (E.D.N.Y. Mar. 30, 2012) ("courts have repeatedly held that federal credit unions are not state actors.") (collecting cases). [5]

[5]  *See also Barroga-Hayes*, 2012 WL 1118194, at *9 ("Although the [United Nations Federal Credit Union ("UNFCU")] may be regulated by the federal government or the state of New York, the UNFCU is not a state actor. As the Supreme Court has consistently held, the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.") (quotation marks, brackets, and citations omitted).

*4  Moreover, the complaint is wholly devoid of any allegations concerning the deprivation of any constitutional right as is required to state a plausible Section 1983 claim. The use of "buzz words" such as "violation of everyone's right" and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). As a result, Plaintiff has failed to allege a claim pursuant to 42 U.S.C. § 1983, which would raise a federal question.

Plaintiff has not alleged, and the Court has not been able to determine, any other basis for federal question jurisdiction. Moreover, because Plaintiff does not allege facts that the parties are diverse, and it appears the parties are all citizens of New York, the Court lacks diversity jurisdiction over Plaintiff's claims. *See* 28 U.S.C. § 1332. Additionally, the Court notes there is no private right of action to enforce either state or federal criminal statutes. *George v. Progressive Ins. Agency, Inc.*, No. 5:18-CV-1138 (DHN/ATB), 2018 WL 4660379, at *3 (N.D.N.Y. Sept. 28, 2018), *report-recommendation adopted*, 2019 WL 5307075 (N.D.N.Y. Oct. 21, 2019).

Therefore, the Court recommends dismissal of Plaintiff's complaint for lack of subject matter jurisdiction.

### D. Leave to Amend

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

In this case, because the Court lacks subject matter jurisdiction, the Court must recommend dismissing the action without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018); *see also Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (holding that where a court dismisses a complaint for lack of subject matter jurisdiction, the court does "not have the power to reach the merits and dismiss the claims against the defendants for failure to state a claim, or to eventually dismiss the complaint with prejudice for failure to file a proposed amended complaint").

This Court has serious doubts about whether Plaintiff can amend to assert any form of federal jurisdiction over the situation that Plaintiff describes in his complaint. Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, the Court recommends that Plaintiff be granted leave to file an amended complaint. Any amended complaint should be a complete pleading, must supersede the original, and must not incorporate any facts from the original complaint. In addition, any amended complaint must assert a proper basis for jurisdiction in federal court. Of course, Plaintiff may also pursue his claims in state court.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    4

2025 WL 4070710

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)

2022 WL 226763

**III. CONCLUSION**

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED SOLELY FOR PURPOSES OF INITIAL REVIEW**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION AND WITH LEAVE TO AMEND**, and it is further

*5  **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226763

End of Document                                                             © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)

2022 WL 446434

2022 WL 446434
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis D. MENARD, Plaintiff,

v.

FIRST SOURCE FEDERAL CREDIT UNION, and Debarah A. Grogan, Defendants.

6:22-CV-38
|
Signed 02/14/2022

**Attorneys and Law Firms**

FRANCIS D. MENARD, Plaintiff, Pro Se, 407 West Street, Apt. D, Rome, NY 13440.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

*1 On January 19, 2022, *pro se* plaintiff Francis Menard ("plaintiff") filed this action against defendants First Source Federal Credit Union and Debarah A. Grogan alleging that, *inter alia*, they have interfered with his bank account and approved him for a bad bank loan. Dkt. No. 1. Plaintiff also applied for leave to proceed *in forma pauperis* ("IFP application"). Dkt. No 2.

On January 26, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP application for the limited purpose of conducting an initial review of his complaint. Dkt. No. 4. Judge Dancks also advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed without prejudice for lack of subject matter jurisdiction. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without prejudice;

3. Plaintiff may, within thirty days from the date of this Order, amend his complaint in accordance with the instructions set forth in the R&R; and

4. Failure to do so will result in dismissal of this action without further Order of the Court.

IT IS SO ORDERED.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Menard v. First Source Federal Credit Union, Not Reported in Fed. Supp. (2022)

2022 WL 446434

## All Citations

Not Reported in Fed. Supp., 2022 WL 446434

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

2025 WL 4070710

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)

2016 WL 7077082

2016 WL 7077082
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamal RASHID, Plaintiff,
v.
Dr. SUFYAN, Defendant.

Civ. No. 1:16-CV-1094(FJS/DJS)
|
Signed 11/04/2016

**Attorneys and Law Firms**

JAMAL RASHID, 15-A-4424, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff, Pro Se.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

*1 The Clerk has sent for review a civil Complaint filed by *pro se* Plaintiff Jamal Rashid, who is presently incarcerated in Great Meadow Correctional Facility. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *In Forma Pauperis* ("IFP").[1] Dkt. No. 5, IFP App. By separate Order, dated November 4, 2016, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

1    This case was initially brought in September 2016, but was administratively closed due to the fact that Plaintiff's IFP Application was incomplete. Dkt. Nos. 2 & 4. Upon the filing of a complete IFP Application, this matter was reopened and forwarded to the undersigned for review. Dkt. Nos. 5 & 6.

### I. DISCUSSION

#### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)
2016 WL 7077082

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 & 679 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

### B. Allegations Contained in Plaintiff's Complaint

**\*2** According to the Complaint, in late-October/early-November 2013, after being choked from behind and losing consciousness, Plaintiff awoke and walked to a hospital for help. Compl. at pp. 4-5.[2] The hospital referred Plaintiff to Defendant Dr. Sufyan for a "shattered orbital floor in his right eye, a broken jaw, and bone fragments in his sinus box." *Id.* Dr. Sufyan performed plastic surgery, consisting of placing metal in Plaintiff's face in three places—eyes, nose, and jaw. *Id.* at p. 4. According to Plaintiff, complications arose wherein his eye bled for a month, screws were falling out, he experienced headaches, and had trouble eating. *Id.* at pp. 4-5. When Plaintiff complained to Dr. Sufyan about a screw that came loose, Dr. Sufyan replied that he should not worry because the brace would come out shortly. *Id.* at p. 5. Medical professionals have advised Plaintiff that the plates were not placed correctly and that the hardware failed.[3] *Id.*

[2]    Citations to the Plaintiff's Complaint are to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

[3]    Plaintiff mentions that he had retained an attorney to represent him in a malpractice action against Dr. Sufyan, but the attorney apparently stopped representing him at some point. It is not clear whether a malpractice action has been brought by Plaintiff and, if so, what the status of such action is at the present time.

The Court notes that in bringing this action, Plaintiff utilized a *pro forma* complaint typically used by inmates who are seeking to vindicate violations of their constitutional rights pursuant to 42 U.S.C. § 1983. That statute "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz*, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). Yet, in the civil cover sheet accompanying his Complaint, Plaintiff indicates that this action is one of personal injury—medical malpractice—and he states that he is bringing this action for "inadequate treatment, negligence (medical misconduct), [and] violation of constitutional right—4th." Dkt. No. 1-1, Civil Cover Sheet.

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of his *pro se* status, and because of the lack of clarity regarding the basis for the Court's jurisdiction, the Court will *sua sponte* assess whether subject matter jurisdiction is present here under both federal question and diversity jurisdiction.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

2025 WL 4070710

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)
2016 WL 7077082

With regard to the Court's federal question jurisdiction, the Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus I start my analysis with the federal statute by which Plaintiff has invoked in order to remedy violations of his constitutional rights.

First, after reviewing the facts of this case, the Court is unsure as to the precise Constitutional right Plaintiff asserts has been violated. But even more problematic for Plaintiff is the fact that the a party may not be held liable under § 1983 unless it can be established that he has acted under the color of State law. *See, e.g., Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under § 1983); *Wise v. Battistoni*, 1992 WL 280914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). Thus, State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.*, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted)).

*3 From all reasonable interpretations of the facts contained in the Complaint, it appears that Defendant Dr. Sufyan is a private surgeon who is employed at the Williams Center Plastic Surgery Specialists, which Plaintiff states is located in Latham, New York. According to the Complaint, it appears that Dr. Sufyan provided medical care to Plaintiff prior to the Plaintiff's incarceration. [4] No where in the Complaint does Plaintiff allege that Dr. Sufyan provided medical care for him on behalf of the State, at the request of the State, or that Dr. Sufyan has any connection to the State such that his actions could be categorized as acting under color of State law. Having failed to show that the Defendant acted under color of State law, Plaintiff fails to state a cognizable cause of action against Defendant Sufyan pursuant to 42 U.S.C. § 1983. Thus, the Court recommends that this claim be dismissed from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

[4]    Indeed, despite Plaintiff's current incarcerated status, there is no indication that Plaintiff's interaction with Dr. Sufyan occurred while Plaintiff was in custody. According to the Complaint, Plaintiff began his relationship with Defendant in October/November of 2013 when, after visiting a hospital, Plaintiff was referred to him for treatment. Compl. at p. 4. Although unclear, it seems that Plaintiff's criminal charge may relate to the reason he sought medical care. *Id.* at p. 5 (noting his belief that his retained civil attorney refused to continue the case due to his criminal case, which "started after someone choked [Plaintiff] from behind until [he] was unconcious" after which he went to the hospital). Plaintiff began experiencing negative side effects from his surgery from some unspecified date, possibly in 2014, through the date the Complaint was signed. *Id.* at pp. 4-5 & 7. According to the Department of Corrections and Community Supervision ("DOCCS"), his current incarceration began in November 2015. *See* DOCCS Inmate Information Data, *available at* http://nysdoccslookup.doccs.ny.gov (information obtained for DIN 15-A-4424). While it is not clear whether Plaintiff served any time in prison during the pendency of the criminal proceeding, and it is not clear when his he stopped getting treatment from Dr. Sufyan, the facts set forth in the Complaint suggest that during the relevant time in question, he was not in prison and was able to travel to his various medical appointments by "medicab". Compl. at p. 5.

Because the Plaintiff has not set forth a cognizable claim pursuant to this Court's federal question jurisdiction, the I will consider whether the Court has subject matter jurisdiction under 28 U.S.C. § 1332, the statute conferring diversity jurisdiction. For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan*, 1999

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    3

2025 WL 4070710

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)

2016 WL 7077082

WL 38256, at *2 (S.D.N.Y. Jan. 28, 1999) (quoting 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.34[2] (3d ed. 1998)).

In the "Parties" section of the Complaint, Plaintiff provides a Comstock, New York, address for himself.[5] For Defendant Dr. Sufyan, Plaintiff lists a Latham, New York address, which, upon information and belief, is his place of employment. Plaintiff's claim sounds in medical malpractice and negligence and he seeks compensation for his pain and suffering in the amount of $2,100,000. While on its face the amount in controversy well exceeds the $75,000 as required by the statute, because both parties apparently reside in the same State, namely, New York State, and thus diversity jurisdiction is lacking. Accordingly, the Court recommends dismissing Plaintiff's State claims, to the extent he has asserted any, due to a lack of subject matter jurisdiction.[6]

[5]    As previously noted, Rashid is currently incarcerated at the Great Meadow Correctional Facility. Compl. at p. 1.

[6]    This is not a ruling nor finding on the merits of any State claim Plaintiff seeks to pursue against Defendant.

### II. CONCLUSION

*4 In light of the above discussion, the undersigned has determined that this Court lacks the subject matter jurisdiction necessary to maintain this action. **WHEREFORE**, it is hereby

**RECOMMENDED**, that this entire action be *sua sponte* dismissed due to lack of subject matter jurisdiction; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7077082

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 4070710

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)

2016 WL 7053412

2016 WL 7053412
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamal RASHID, Plaintiff,

v.

Dr. SUFYAN, Plastic Surgeon, Williams Center Plastic Surgeons Specialists, Defendant.

1:16-CV-1094 (FJS/DJS)
|
Signed 12/05/2016

**Attorneys and Law Firms**

JAMAL RASHID, 15-A-4424, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff pro se.

**ORDER**

SCULLIN, Senior Judge

*\*1* In a Report-Recommendation and Order dated November 4, 2016, Magistrate Judge Stewart, after conducting a review of the sufficiency of Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), concluded that the Court did not have subject matter jurisdiction over this matter either under federal question jurisdiction or diversity jurisdiction. Therefore, he recommended that the Court dismiss this action. *See* Dkt. No. 8 at 7.

On November 28, 2016, the Court received for filing a document, which the Court has construed as Plaintiff's objections to Magistrate Judge Stewart's recommendation. *See* Dkt. No. 9. In that document, Plaintiff does not address the jurisdictional issue but, rather, discusses his medical problems and acknowledges that he was not incarcerated when Defendant Dr. Sufyan violated his right, under the Eighth Amendment, to have adequate medical care. *See id.* at 1.

Whether Plaintiff is attempting to assert his claim against Defendant Dr. Sufyan under the Fourth Amendment or the Eighth Amendment does not change the fact that Plaintiff's complaint does not contain any allegations from which the Court can draw the reasonable inference that, at the time Defendant Dr. Sufyan treated Plaintiff, he did so "on behalf of the State, at the request of the State, or ... ha[d] any connection to the State such that his actions could be categorized as acting under color of State law." *See* Dkt. No. 8 at 6. Thus, the Court agrees with Magistrate Judge Stewart that Plaintiff has failed to state a cause of action against Defendant Dr. Sufyan pursuant to 42 U.S.C. § 1983; and, therefore, the Court lacks federal question jurisdiction over this matter.

Likewise, there is nothing in Plaintiff's complaint or in his objections to Magistrate Judge Stewart's recommendation that indicates that Plaintiff and Defendant are citizens of different states for purposes of diversity jurisdiction. In fact, as Magistrate Judge Stewart pointed out, it appears that both parties appear to be residents of the State of New York. *See* Dkt. No. 8 at 7. The Court agrees with this assessment and, therefore, concludes that it lacks diversity jurisdiction over this matter.

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Stewart's November 4, 2016 Report-Recommendation and Order is **ACCEPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED** for lack of subject matter jurisdiction; and the Court further

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)

2016 WL 7053412

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7053412

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

Canfield v. Tartaglia, Slip Copy (2025)

2025 WL 553468

2025 WL 553468
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick CANFIELD, Plaintiff,
v.
Peter TARTAGLIA, et al., Defendants.

6:24-cv-1303 (GTS/TWD)
|
Signed February 19, 2025

**Attorneys and Law Firms**

FREDERICK CANFIELD, Plaintiff, pro se, 23-B-5349, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

*1 The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Frederick Canfield ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. Dkt. No. 1. Plaintiff, who was confined at the Oneida County Correctional Facility at the time of filing, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 2, 3.

### II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP.[1]

[1]    Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

### III. BACKGROUND

As stated above, Plaintiff identified the Oneida County Correctional Facility as his place of detention at the time of his complaint, dated September 30, 2024. *See* Dkt. No. 1 at 2, 6.[2] Plaintiff also reported "23B5349" as an identification number associated with a prior period of incarceration. *See id.* at 2.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    1

Canfield v. Tartaglia, Slip Copy (2025)

2025 WL 553468

2    Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

At approximately 9:00 p.m. on July 12, 2024, "Sergeant Richard Kimmerer and several others including my parole officer Peter Tartaglia ... showed up on Mumbulo RD at my brothers property and told me I had pending charges for some incident that happened 2 weeks prior, and had no evidence to support that and proceeded to put me in handcuffs." *Id.* at 4. Plaintiff avers "[b]ecause Sergeant Kimmerer lacked evidence to charge me with he got Mr. Tartaglia to act as a stalky horse to conduct a illegal and unlawful search to find evidence that they lacked to act upon to charge me with." *Id.* Therefore, "without consent or a warrent they illegally and unlawfully conducted a illegal search that violated my 4th and 14th Amendment on a camper that was not mine." *Id.* "They found a bag of pills and a Gram of meth to illegally charge me with and took me to jail to unlawfully imprison me." *Id.* "Mr. Tartaglia was filling out the warrant while I was in the back of the Sheriffs car." *Id.* at 5.

*2    At the time he filed his complaint, Plaintiff had been "sitting in jail ... for 75 days with no indictment ...." *Id.* at 4-5. He states he has been "unlawfully imprisoned." *Id.* at 5. Plaintiff also avers he "was coerced into signing the parole agreement papers with my freedom from prison, If not for that I would not have signed the agreement. So I believe that makes it void." *Id.* at 5. He further argues "Parole status does not provide parole officers a Golden ticket to search him/her whenever the mood strikes nor can they run interference for the police to help them find evidence for crimes they are investigating but otherwise lack probable cause to act upon." *Id.*

Plaintiff identified three claims: (1) "Mr. Tartaglia conducted a illegal search and seizure violating my 4th and 14th Amendment Rights;" (2) "Sergeant Richard Kimmerer conducted a warrentless and illegal search and seizure violating my 4th and 14th Amendment Rights;" and (3) "Sergeant Kimmerer and Mr. Tartaglias actions deprived me of Life and liberty violating my 14th Amendment Right." *Id.* at 6. He seeks "$500,000 for the Damage and to stop them from doing this to other people, compensatory Damage and punitive damage." *Id.* On January 14, 2024, Plaintiff filed a motion to appoint counsel. *See* Dkt. No. 8.

The Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") public administrative records which indicate "Fredrick Canfield," DIN 23B5349, was accepted into DOCCS custody on February 3, 2025, and list the admission type as "RETURN FROM PAROLE/COND REL." *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on Feb. 14, 2025); *see also, e.g., Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information ...."); *Peterkin v. Mullin*, No. 5:24-CV-0377 (GTS/TWD), 2024 WL 2022054, at *1 (N.D.N.Y. May 6, 2024) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Incarnated Lookup search page), *report and recommendation adopted*, 2024 WL 4262573 (N.D.N.Y. Sept. 23, 2024).

## IV. LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25,

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

2025 WL 4070710

Canfield v. Tartaglia, Slip Copy (2025)
2025 WL 553468

33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

**\*3** Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

Here, given Plaintiff's allegation that he has been "unlawfully imprisoned," Dkt. No. 1 at 5; *see also*, Dkt. No. 1 at 4, his assertion that his "parole agreement papers" are "void," Dkt. No. 1 at 5, and his aforementioned return to physical custody from parole, *see supra*, Section III, it appears Plaintiff is attempting to seek review of a parole violation/revocation of parole status resulting from the events of July 12, 2024. In *Heck v. Humphrey*, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994). Further, Courts have subsequently made clear that "*Heck* and its 'favorable termination' rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole." *Partee v. City of Syracuse*, No. 5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at \*6 (N.D.N.Y. May 23, 2019) (citing *Bratton v. New York State Div. of Parole*, No. 5:05-CV-0950, 2006 WL 2792743, at \*2 (N.D.N.Y. Sept. 27, 2006)) (additional citations omitted), *report and recommendation adopted*, 2019 WL 2616954 (N.D.N.Y. June 26, 2019); *see also Opperisano*, 286 F. Supp. 3d at 454 (explaining, "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole.") (citing *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.    3

prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.")) (additional citations omitted).

**\*4** Accordingly, insofar as Plaintiff seeks to challenge his current confinement, any such claim is barred by *Heck* and should be dismissed. *Smurphat v. Hobb*, No. 8:19-CV-0804 (GTS/CFH), 2019 WL 7971869, at \*5 (N.D.N.Y. Sept. 27, 2019) (finding the plaintiff's claims, which "appear[ed] to be challenging the terms and conditions of his parole as well as the parole revocation" were "barred by *Heck*" and recommending dismissal of such claims without prejudice), *report and recommendation adopted*, 2019 WL 6827571 (N.D.N.Y. Dec. 13, 2019); *Barzee v. Wison*, No. 5:24-CV-1237 (DNH/MJK), 2024 WL 4751552, at \*6 (N.D.N.Y. Nov. 12, 2024) (explaining, "plaintiff's claims against the defendant law enforcement officers as they relate to the revocation of his parole may not proceed."), *report and recommendation adopted*, 2024 WL 4969972 (N.D.N.Y. Dec. 4, 2024).

"Moreover, the Second Circuit has made clear that, 'when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom.' " *Brown v. Budelmann*, No. 5:23-CV-0002 (MAD/TWD), 2023 WL 4424119, at \*3 n.7 (N.D.N.Y. Apr. 17, 2023) (quoting *Stegemann v. Rensselaer Cnty. Sheriff's Off.*, No. 20-CV-3316, 2021 WL 5492966, at \*2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7)), *report and recommendation adopted*, 2023 WL 4144999 (N.D.N.Y. June 23, 2023). Therefore, because Plaintiff has not alleged injury resulting from the allegedly unreasonable search and seizure beyond his confinement, he cannot recover for the search and seizure absent a showing of favorable termination of his parole revocation. *See, e.g., Kravitz v. City of Hudson*, No. 1:17-CV-1175 (TJM/CFH), 2017 WL 6403075, at \*2 (N.D.N.Y. Nov. 16, 2017) (explaining, "[i]f it is the case that the allegedly illegal search of plaintiff's property led to a criminal conviction, a challenge to the search of the property would be barred by *Heck* as success on such claim would necessarily invalidate that conviction."), *report and recommendation adopted*, 2017 WL 6389715 (N.D.N.Y. Dec. 12, 2017).

Should Plaintiff file an amended complaint, "he may be able to address the *Heck* bar through more detailed pleading regarding the status of his parole revocation, or by demonstrating that his claims do not implicate the invalidity of his parole revocation." *Kelly v. Albany Cnty. Prob. Dep't*, No. 8:20-CV-0722 (GLS/DJS), 2020 WL 4458929, at \*2 (N.D.N.Y. July 9, 2020), *report and recommendation adopted*, 2020 WL 4432711 (N.D.N.Y. July 31, 2020). Accordingly, the undersigned recommends the complaint be dismissed without prejudice and with leave to amend. *See, e.g., Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 1486836, at \*3 (N.D.N.Y. Apr. 4, 2019) (recommending the "plaintiff's false imprisonment and false arrest causes of action be dismissed without prejudice and with opportunity to amend to specify any and all criminal charges brought against him in connection with the August 9, 2018 incident and whether a 'conviction or sentence has been reversed ...., expunged ...., [or otherwise] declared invalid[.]' "), *report and recommendation adopted*, 2019 WL 1922286 (N.D.N.Y. Apr. 30, 2019).

## VI. MOTION FOR COUNSEL
Based on the above recommendation to dismiss the complaint, the undersigned further recommends Plaintiff's motion for counsel, Dkt. No. 8, be denied as moot. *See, e.g., Salaam v. Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-0689 (BKS/TWD), 2019 WL 4415624, at \*4 (N.D.N.Y. Sept. 16, 2019).

## VII. CONCLUSION
**\*5 WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 8) be **DENIED**; and it is further

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 4

**Canfield v. Tartaglia, Slip Copy (2025)**
2025 WL 553468

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[3]   If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 553468

---

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.   5

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.   68

Canfield v. Tartaglia, Slip Copy (2025)

2025 WL 949845

2025 WL 949845
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick CANFIELD, a/k/a Fredrick Canfield, Plaintiff,

v.

Peter TARTAGLIA, Parole Ofcr.; and Richard Kimmerer, Parole Ofcr., Defendants.

6:24-CV-1303 (GTS/TWD)
|
Signed March 28, 2025

**Attorneys and Law Firms**

FREDERICK CANFIELD, 23-B-5349, Plaintiff, Pro Se, Mohawk Correctional Facility, P.O. Box 8451, Rome, New York 13440.

## DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Frederick Canfield, a/k/a Fredrick Canfield, ("Plaintiff") against parole officers Peter Tartaglia and Richard Kimmerer ("Defendants"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint (Dkt. No. 1) be dismissed "without prejudice and with leave to amend" as barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and that Plaintiff's motion to appoint counsel (Dkt. No. 8) be denied. Plaintiff has not filed an Objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation:[1] Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 10.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 10) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be DISMISSED with prejudice** and without further Order of this Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that specifies the details of the revocation of his parole status resulting from the events of July 12, 2024,

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Canfield v. Tartaglia, Slip Copy (2025)

2025 WL 949845

and whether his parole revocation has been reversed, expunged, otherwise declared invalid, as referenced in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff file such a timely **AMENDED COMPLAINT**, it shall be referred to Magistrate Judge Dancks for her review; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 8) is **DENIED**.

**All Citations**

Slip Copy, 2025 WL 949845

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

Salaam v. Department of Corrections and Community..., Not Reported in Fed....
2019 WL 4415624

2019 WL 4415624
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rashad SALAAM, Plaintiff,
v.
State of New York DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, et al., Defendants.

9:19-CV-0689 (BKS/TWD)
|
Signed 09/16/2019

**Attorneys and Law Firms**

RASHAD SALAAM, 14-A-3363, Plaintiff, pro se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, NY 12929.

**DECISION AND ORDER**

BRENDA K. SANNES, United States District Judge

**I. INTRODUCTION**

*1 The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Rashad Salaam pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a motion for appointment of counsel. Dkt. No. 1 ("Compl."); Dkt. No. 8 ("Motion for Counsel"); Dkt. No. 11 ("IFP Application").[1] Plaintiff is currently incarcerated at Clinton Correctional Facility and has not paid the filing fee for this action.

[1]    Plaintiff filed his complaint in the Eastern District of New York. See Compl. After this action was transferred to this District, it was administratively closed based on plaintiff's failure to comply with the filing fee requirements. Dkt. No. 7. Plaintiff then filed his IFP Application, and the action was re-opened. Dkt. Nos. 11, 12.

**II. IFP APPLICATION**

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application (Dkt. No. 11) which demonstrates economic need. See 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, plaintiff's IFP Application is granted.

**III. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. See id.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Salaam v. Department of Corrections and Community..., Not Reported in Fed....

2019 WL 4415624

[2]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

**\*2**  Plaintiff asserts allegations of wrongdoing while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Auburn Correctional Facility ("Auburn C.F."). *See generally* Compl. Plaintiff names DOCCS and Jason Williams, an inmate in the custody of DOCCS, as defendants. Compl. at 1-2. The following facts are set forth as alleged by plaintiff in his complaint.

In July 2017, defendant Jason Williams entered plaintiff's cell holding "a medium shank" and directed plaintiff to "take [his] pants off[.]" Compl. at 4. Plaintiff complied, and inmate Williams then sexually assaulted him. *Id.*

"[D]ays later, while plaintiff was walking to his cell, inmate Williams "approached [him] from behind with a razor shank" and cut his face. Compl. at 4. Plaintiff ran to his cell, and inmate Williams chased after him. *Id.* Upon entering plaintiff's cell, inmate Williams "sliced [plaintiff's] arm[.]" *Id.* Plaintiff responded by throwing "items" at inmate Williams, who then left plaintiff's cell. *Id.* Unidentified corrections officials were witnesses but "did not say anything[,]" and plaintiff "had to tell them about the cutting." *Id.*

Following the second attack by inmate Williams, plaintiff was escorted to the infirmary, where he received treatment for cuts on his face and right arm. Compl. at 4.

Construed liberally, the complaint asserts an Eighth Amendment failure-to-protect claim against DOCCS and an assault claim against defendant inmate Williams.[3] Plaintiff seeks monetary and injunctive relief. Compl. at 5. For a complete statement of plaintiff's claims, reference is made to the complaint.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    2

[3] Plaintiff has not named any of the officials who allegedly witnessed this event as defendants. The Court therefore declines to analyze the sufficiency of plaintiff's allegations against these non-parties.

**C. Analysis**

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. DOCCS

The Eleventh Amendment bars federal court claims against states, absent their consent to such suit or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989);[4] *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98-100 (1984). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *McGinty v. New York,* 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.' "); *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."); *Rivera v. Goord,* 119 F. Supp. 2d 327, 336 (S.D.N.Y. 2000) (defendant correctional facility is immune from suit since it is a branch of a state agency). Thus, plaintiff's claims against DOCCS fail because it is an arm of New York State. *See Davis v. New York,* 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against DOCCS on 11th Amendment grounds); *Jones v. New York State Division of Military and Naval Affairs,* 166 F.3d 45, 49 (2d Cir. 1999) (the Eleventh Amendment bars Section 1983 suits against state agencies).

[4] The Supreme Court has held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will,* 491 U.S. at 66.

*3 Accordingly, the New York State Department of Corrections and Community Supervision, and all claims against it, are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Inmate Jason Williams

In order to maintain a Section 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994); *see also Rounseville v. Zahl,* 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under Section 1983). State action is an essential element of any Section 1983 claim. *See Gentile v. Republic Tobacco Co.,* No. 6:95-CV-1500 (RSP/DNH), 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady,* 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, C.J.)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

Plaintiff has not alleged any nexus between the State of New York and the alleged wrongdoing by defendant Williams, nor has he alleged any facts which plausibly suggest that defendant Williams violated his constitutional rights, or any of his rights under Federal law.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 3

2025 WL 4070710

Thus, defendant Williams and all claims against him are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Dismissal with Leave to Amend

The Court recognizes that plaintiff is proceeding pro se and that this requires the Court to treat his pleadings with a certain degree of liberality. Despite this, the complaint is wholly insufficient to state any plausible claim for relief or to allow a proper defendant to make a reasonable response. As a result, and for the reasons set forth above, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

In light of plaintiff's pro se status, the Court will afford him an opportunity to file an amended complaint if he wishes to avoid dismissal of this action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). In any amended complaint that plaintiff submits in response to this Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claim that the individuals named as defendants engaged in misconduct or wrongdoing that violated his constitutional rights. Any amended complaint filed by plaintiff must bear his original signature, and must be a complete pleading which will supersede and replace the original complaint in its entirety. Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts he relies on in support of his claim that the defendants violated his statutory or constitutional rights. While it is not improper for a plaintiff to identify a defendant only as "John/Jane Doe" at the outset of litigation, a complaint must nevertheless set forth factual allegations regarding the actions taken by each Doe defendant which plaintiff relies on in support of his claim that the defendant was personally involved in conduct violative of his statutory or constitutional rights.

*4 Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### IV. MOTION FOR COUNSEL

Based on the Court's decision preliminarily dismissing the complaint, plaintiff's Motion for Counsel is denied as moot. In the event that plaintiff files an amended complaint in compliance with this Decision and Order, he may renew his motion for counsel.

### V. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 11) is **GRANTED**.[5] The Clerk shall provide the superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[6] and it is further

[5] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[6] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                4

2025 WL 4070710

Salaam v. Department of Corrections and Community..., Not Reported in Fed....
2019 WL 4415624

**ORDERED** that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the New York State Department of Corrections and Community Supervision, and all claims against it, are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted and because DOCCS is entitled to Eleventh Amendment immunity;[7] and it is further

[7]    Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).

**ORDERED** that plaintiff's Motion for Counsel (Dkt. No. 8) is **DENIED as moot** with leave to renew in the event plaintiff files an amended complaint; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended complaint as directed above **within thirty (30) days** from the filing date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

 **\*5  ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4415624

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**All Citations**

Slip Copy, 2025 WL 4070710

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 174048

2026 WL 174048
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas KURTZ, Plaintiff,

v.

SMITH, et. al., Defendants.

3:25-cv-692 (LEK/TWD)

|

Signed 01/22/2026

**Attorneys and Law Firms**

Thomas Kurtz, Marcy, NY, Pro Se.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Thomas Kurtz filed this action, *in forma pauperis*, on June 2, 2025, pursuant to 42 U.S.C. § 1983, alleging, that the Defendants deprived him access to his money, stole from his account, and violated the Antiterrorism act, 18 U.S.C. § 233, as "sponsors of Terrorism." Dkt. No. 1 ("Complaint"), Dkt. No. 7 ("IFP Application"). Plaintiff also filed a motion requesting the appointment of counsel. Dkt. No. 4. On October 3, 2025, the Honorable Therese Wiley Dancks, United States Magistrate Judge, issued a Report-Recommendation and Order recommending that the Court grant Plaintiff's IFP Application, dismiss Plaintiff's Complaint, and deny Plaintiff's request for the appointment of counsel. Dkt. No. 13 ("Report and Recommendation"). Plaintiff has filed objections. Dkt. No. 16 ("Objection"), Dkt. No. 17 ("Supplemental Objections"); Dkt. No. 21 ("Second Supplemental Objections"). On December 10, 2025, Plaintiff also filed an amended complaint. Dkt. No. 22 ("Amended Complaint").

For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

**II. BACKGROUND**

The Court assumes familiarity with Judge Dancks's Report and Recommendations, as well as Plaintiff's factual allegations as detailed therein. *See* R. & R. at 2–3.

**III. LEGAL STANDARD**

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); *see also* 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by magistrate judges are also governed by the Local Rules. *See* L.R. 72.1. 28 U.S.C. § 636 states:

> Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination

of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C). When written objections are filed and the district court conducts a de novo review, that "*de novo* determination does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." *A.V. by Versace*, 191 F. Supp. 2d at 406 (emphasis in original).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." *N.Y.C. Dist. Councils. of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

 **\*2**  "The objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.' " *DiPilato*, 662 F. Supp. 2d at 340 (emphasis in original) (quoting *Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at \*24 (S.D.N.Y. Sept. 26, 2008)). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato*, 662 F. Supp. 2d at 340 (quoting *Pinkney v. Progressive Home Health Servs.*, No. 06-CV-5023, 2008 WL 2811816, at \*1 (S.D.N.Y. July 21, 2008))

## IV. DISCUSSION

Plaintiff filed three documents that he characterized as objections. *See generally* Obj.; Supp. Obj.; Second Supp. Obj. The court does not find anything in these documents to be objections that are "specific and clearly aimed at particular findings in the magistrate's proposal." *DiPilato*, 662 F. Supp. 2d at 340. Indeed, Plaintiff's Objections and Supplemental Objections appear to be restatements of his legal claims and the facts underlying his claim. *See generally* Obj.; Supp. Obj; Second Supp. Obj. Accordingly, the Court will review the Report and Recommendation under the clear error standard of review. *N.Y.C. Dist. Councils. of Carpenters Pension Fund*, 341 F. Supp. 3d at 336.

Further, Plaintiff's Amended Complaint does not solve the deficiencies in the original Complaint identified by Judge Dancks. *See generally* R. & R. 5–10. The relevant differences between the first and second complaints are the removal of the city of Ithaca and the Plaintiff's assertion that jurisdiction is proper under 42 U.S.C. §§ 1983, 1985(b), as well as 28 U.S.C. §§ 1331, 1343. *Compare* Compl. at 2–3, *with* Am. Compl. at 1, 4. Judge Dancks in her Report and Recommendation has thoroughly explained why this Court lacks jurisdiction in this case under section 1983, as well as sections 1331, and 1343. *See* R. & R. at 6–9. Having reviewed the Report and Recommendation for clear error, the Court finds none and adopts the Report and Recommendation in its entirety.

Liberally construed, the Court understands Plaintiff in his Amended Complaint to be making an additional argument under 42 U.S.C. § 1985(3) that his rights were deprived by the Community Federal Credit Union. *See* Am. Compl. at 4–6. To successfully make out a conspiracy claim under Section 1985(3) a plaintiff must allege:

1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges, and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his persons or property or deprived of any right or privilege of a citizen of the United States.

*Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir. 2006).

For a conspiracy under Section 1985(3) to be actionable it also must be "motivated by some racial or ... class-based, invidious discriminatory animus." *Cine Sk8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotes omitted). Here, Plaintiff has not alleged anywhere in his Amended Complaint that he was deprived of rights as a result of a conspiracy motivated by racial, class-based, or invidious discriminatory animus. *See generally*, Am. Compl.

The Court therefore dismisses Plaintiff's Complaint and terminates this action.

## V. CONCLUSION

**\*3**  Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 13, is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED,** that this action is **DISMISSED**; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 174048

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2722411
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn Taylor GAMMONS, Plaintiff,

v.

Samantha Anna-Kay CODY, et al., Defendants.

1:25-CV-941 (AJB/DJS)
|
Signed September 2, 2025

**Attorneys and Law Firms**

SHAWN TAYLOR GAMMONS, Plaintiff, Pro Se, Albany, New York 12206.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1**  The Clerk has forwarded for review a civil Complaint filed by Plaintiff. The Complaint was filed July 17, 2025. Dkt. No. 1, Compl. The filing fee in this action has not been paid, but Plaintiff has filed a motion to proceed *in forma pauperis*. Dkt. No. 2. That Motion has been granted. The matter has been referred to the undersigned for an initial review pursuant to L.R. 72.3.

## I. FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff Shawn Taylor Gammons and Defendant Samantha Anna-Kay Cody were married and have two children together, S.N. and S.M. *See generally*, Compl. Plaintiff and Defendant are now separated, and Samantha Cody now resides with Defendant Derek Cody, in Freehold, New York. Compl. at ¶¶ 7 & 8. The children live with their mother in Freehold, while Plaintiff lives in Albany, New York. Compl. at ¶¶ 5 & 6. In March 2025, domestic strife between Samantha Cody and Derek Cody precipitated a custody proceeding in Greene County Family Court. Compl. at ¶¶ 18 & 19. This matter was assigned to Defendant Family Court Judge Charles Tailleur and, it appears, is still ongoing. Judge Tailleur appointed Defendant Andrea Gamalski to represent Plaintiff, Defendant Sondra Smith to represent Defendant Samantha Cody, and Defendants Max Zacker and James Gross to represent S.N. and S.M. Gammons respectively. Compl. at ¶¶ 12-15. Plaintiff alleges these court appointed attorneys capitalized on a bias against him, failed to make proper motions, provided ineffective counsel for his children, and refused to submit favorable evidence. Compl. at ¶¶ 22 & 31.

Judge Tailleur issued, and at times extended, a temporary order of protection against Plaintiff, ordered him to pay child support, and ordered to Plaintiff to serve 30 days in Greene County Jail on account of his failure to do so. Plaintiff alleges that he was not given sufficient notice of the hearing for a temporary order of protection. He further alleges that the child support determinations of both Judge Tailleur and Defendant Sarah Richards, a child support magistrate, are without legal justification or jurisdiction, and that conclusions of his violation and the subsequent jail time are based on erroneous information provided to Greene County Family Court by Samantha and Derek Cody. Specifically, Plaintiff contests the sum of $27,000 owed in child support as discharged by Judge Tailleur in an earlier proceeding. Plaintiff alleges, as part of a broader conspiracy, that his testimony was systematically excluded, while representations by Defendants, including court appointed attorneys, were admitted despite what he contends are either biases or outright lies. Plaintiff also takes issue with the denial of certain proposed conditions of custody issued by Judge Tailleur. *See generally* Compl.

Plaintiff also lists his children as plaintiffs in this action. He claims his children were prevented from participating in the Family Court proceedings, exposed to domestic violence by Samantha and Derek Cody, and that S.N.G. was body-slammed by a New York State Trooper and ordered to enroll in a Pre-Person's In Need of Supervision program without due process. *Id.*

**\*2** Plaintiff also claims he has been denied custodial, visitation, and parental rights with respect to S.N. and S.M. He further claims that Samantha Cody attempted to prevent court-appointed attorneys from interviewing the children in relation to the custody proceeding. *Id.*

Plaintiff alleges violations of his Fourth, Sixth, Seventh, Thirteenth, and Fourteenth Amendment rights by the Defendants. Plaintiff also claims common law conversion as against Defendants Samantha and Derek Cody. Finally, he appears to allege a separate due process violation against Columbia and Greene Counties. In his prayer for relief, Plaintiff demands a jury trial and requests the arrest and deportation of Samantha Cody, sole legal and residential custody of S.N. and S.M., discharge of his child support obligations, impeachment of all public officers named as Defendants in the case, a public apology, and derivative use immunity. Compl. at pp. 15-16

## II. GOVERNING LEGAL STANDARD

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [1]

[1] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

## III. DISCUSSION

2025 WL 2722411

### A. Plaintiff's Claims on Behalf of his Children

**\*3** It appears that Plaintiff may intend to assert claims on behalf of his children. The Complaint identifies Plaintiff's children as Plaintiffs. Compl. at p. 2. The children have not signed the Complaint. While a litigant in federal court has the right to act as her own counsel, "[a] person who has not been admitted to the practice of law may not represent anybody other than [her]self." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citation omitted). This rule extends to parents: "a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child." *Tindall v. Pultney High School Dist.*, 414 F.3d 281, 284-85 (2d Cir. 2005).[2] As a result, any claim brought on behalf of the children should be dismissed. *H.B. v. Brookdale Hosp.*, 2022 WL 17539117, at \*2 (E.D.N.Y. Dec. 8, 2022).[3]

[2]   This is particularly true where as here "one parent is attempting to bring suit on behalf of a child against the other parent." *Mulready v. Mulready*, 2007 WL 1791120, at \*1 (D. Conn. June 16, 2007).

[3]   The sole factual allegation in the Complaint against a State Trooper identified only as John Doe relates to allegations of alleged assault against one of Plaintiff's children. Compl. at ¶ 17. Since there is no allegation that Doe violated Plaintiff's rights, it is recommended that that claim be dismissed.

### B. Judicial Immunity

Judge Charles Tailleur continues to preside over Family Court proceedings involving Plaintiff and Defendants Samantha Anna-Kay Cody and Derek Cody. All claims against Judge Tailleur arise out of actions taken in his judicial capacity. At a March 24, 2025 appearance, Judge Tailleur took testimony from the parties and issued a temporary order of protection against Plaintiff. Compl. at ¶¶ 22 & 29. At an April 7, 2025 appearance, Judge Tailleur extended the temporary order of protection and elicited more testimony from the parties. Compl. at ¶ 29. Finally, at a May 5, 2025 appearance, Judge Tailleur made several determinations on the issue of custody, including with respect to a pick-up/drop-off location and visitation, and further extended the temporary order of protection. Compl. at ¶ 31. Plaintiff contends that Judge Tailleur gave no legal justification for his rulings on custody or visitation, or his extensions to the temporary order of protection.

Judicial immunity is applicable to conduct taken by the court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those performed in the clear absence of all jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967). The Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 336 (1871)). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

"Judicial immunity is overcome in only two circumstances: (1) a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity; and (2) a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *McCluskey v. Roberts*, 2022 WL 2046079, at \*5 (2d Cir. June 7, 2022) (internal quotation omitted). Acts related to a specific case, such as the orders of protection and support determinations at issue here, are clearly judicial in nature. *Bliven v. Hunt*, 579 F.3d at 210. And "[j]udicial immunity applies to these judicial acts even if they were allegedly done maliciously or corruptly." *McCluskey v. Roberts*, 2022 WL 2046079, at \*5. For these reasons, no exception to the immunity doctrine applies and claims against Judge Tailleur should be dismissed.

**\*4** Defendant Richards is identified as a New York Support Magistrate. Compl. at ¶ 10. Plaintiff's claims against Defendant Richards concern her role in child support determinations made on June 4, 2025. Plaintiff contests Richards's assessment that Plaintiff owes $27,000 in child support to Samantha Cody and claims the sum was discharged as a result the divorce agreement

he entered with his ex-wife in 2010. He further takes issue with Richards's demands to appear at a July 18, 2025 hearing with copies of certain court records so that Judge Tailleur can properly adjudicate his case. These actions are also within the scope of judicial immunity as they are an extension of the Court's custodial proceedings. *See Gerken v. Gordon*, 2024 WL 4608307, at *8 (N.D.N.Y. Oct. 29, 2024) (child support magistrate found immune from suit under doctrine of judicial immunity); *Clay v. Bishop*, 2023 WL 3352903, at *4 (N.D.N.Y. Feb. 7, 2023), *report and recommendation adopted*, 2023 WL 2910545 (N.D.N.Y. Apr. 12, 2023). Thus, claims against Defendant Richards must also be dismissed.

The vast breadth of judicial immunity also protects judicial staff. *See Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity."). "Judicial immunity has been extended to court clerks and others who perform functions closely associated with the judicial process when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." *Kellier v. Ross*, 2022 WL 1292290, at *4 (S.D.N.Y. Apr. 29, 2022) (internal quotation omitted) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) and *Rodriguez v. Weprin*, 116 F.3d at 66). "Court clerks have absolute immunity from civil liability based on actions they take in helping process cases, even if such actions are 'ministerial' or 'administrative.' " *Foy v. New York State Unified Ct. Sys.*, 740 F. Supp. 3d 136, 150 (E.D.N.Y. 2024) (quoting *Rodriguez v. Weprin*, 116 F.3d at 66-67). As to Defendant Paula Wright, Plaintiff complains of a hearing for a temporary order of protection of which he was not informed. Compl. at ¶ 28-i. This is the only allegation against Wright and, because of it is in relation to docketing, scheduling, and court proceedings, it clearly falls within that immunity. *Foy v. New York State Unified Ct. Sys.*, 740 F. Supp. 3d at 150; *Goldberg v. Roth*, 2001 WL 1622201, at *4 (S.D.N.Y. Dec. 17, 2001). [4]

[4] The Complaint also names Shara Berg as a Defendant. It appears that Berg is the Chief Clerk of Columbia County Family Court. https://ww2.nycourts.gov/courts/3jd/columbia/3JD-Columbia%20Multi%20Courts.shtml. The Court takes judicial notice of that fact. *Serrano v. DiPerna*, 2024 WL 5247710, at *2 (W.D.N.Y. Dec. 30, 2024). Any claim made regarding Berg's handling of proceedings in state court are likewise covered by this judicial immunity doctrine.

Accordingly, claims against Defendants Wright and Berg must also be dismissed.

### C. State Action

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d at 186) (internal quotations and alterations omitted).

**\*5** The role of counsel appointed to represent Plaintiff and Defendant Anna-Kay Cody in state court litigation does not render them state actors. *See, e.g., Alexander v. Murphy*, 2018 WL 3232349, at *5 (N.D.N.Y. July 2, 2018), *report and recommendation adopted*, 2018 WL 6000145 (N.D.N.Y. Nov. 14, 2018) (private attorney not a state actor); *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (citing cases). The same is true for counsel appointed to act as law guardians for the children. *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 500 (2d Cir. 2012) ("although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent.").

2025 WL 2722411

The Complaint also names Samantha Anna-Kay Cody and Derek Cody as Defendants with respect to section 1983 claims. Compl. at pp. 2 & 15. "Private parties are generally not amenable to suit under § 1983, because they are not state actors." *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664 (2d Cir. 2009). The mere fact that they allegedly availed themselves of the judicial system, Compl. at ¶¶ 11-12, does not make them state actors. *Sam & Mary Hous. Corp. v. New York State*, 632 F. Supp. 1448, 1450 (S.D.N.Y. 1986) ("one does not become a state actor merely by being a litigant in a state court action.").

Accordingly, the Court recommends that the section 1983 claims against Defendants Samantha Cody, Derek Cody, Gamalski, Smith, Zacker, and Gross be dismissed based on a failure to allege state action.

### D. Personal Involvement

Defendant Valerie Caruso is sued in her capacity as Director of Columbia County Support Collections Unit. Compl. at ¶ 16. Though named in the Complaint, there are little, if any, specific factual allegations made against Defendant Caruso.

Liability under section 1983 action is appropriate only if a defendant was personally involved in the alleged constitutional violation. *See Wright v. Smith*, 31 F.3d 496, 501 (2d Cir. 1994); *Collins v. Saratoga Cty. Support Collection Unit*, 2012 2571288, at *3 (N.D.N.Y. July 3, 2012). "[M]ere 'bald assertions and conclusion of law' do not suffice." *Dorsey v. Fisher*, 2010 WL 2008966, at *6 (N.D.N.Y. May 19, 2010) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)). Here, the lack of factual allegations against this Defendant warrant dismissal of claims against Caruso. *Hendrickson v. U.S. Atty. Gen.*, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994), *aff'd*, 40 F.3d 1236 (2d Cir. 1994) ("To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law.").

### E. Conversion Claim

The second cause of action in the Complaint is identified as a conversion claim against Samantha and Derek Cody. Compl. at p. 16. The allegations are brief and allege only that Defendant Samantha Cody "defrauded" multiple governmental agencies through perjury. *Id.*

"According to New York law, 'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.' " *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir.), *certified question accepted*, 7 N.Y.3d 837, 857 N.E.2d 528 (2006), *and certified question answered*, 8 N.Y.3d 283 (2007).

Federal courts are courts of limited jurisdiction. *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Jurisdiction exists when the matter at issue arises "under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction also exists when diversity of citizenship is present. 28 U.S.C. § 1332. Conversion is a "pure state law claim[ ]." *Greenidge v. Mundo Shipping Corp.*, 41 F. Supp. 2d 354, 358 (E.D.N.Y. 1999). As a result, no federal "arising under" jurisdiction exists for such a claim.

**\*6** "Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotations omitted). Complete diversity is required – meaning if any Defendant is a resident of the same state as the Plaintiff, diversity jurisdiction does not exist. *Seemann v. Maxwell*, 178 F.R.D. 23, 24 (N.D.N.Y. 1998). The Complaint specifically alleges that both Plaintiff and the Cody Defendants are residents of New York. Compl. at p. 2. As a result, there is also no diversity jurisdiction in this case and no independent jurisdictional basis for entertaining these claims.

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting.

### F. Municipal Defendants

The third cause of action in the Complaint names Columbia County and Greene County as Defendants. Compl. at p. 16. Claims against these Defendants should be dismissed.

In *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978), the Supreme Court found that "the language of § 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Courts apply "rigorous standards of culpability and causation" to ensure that the municipality is not held liable solely for the actions of its employees. *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). Thus, in order for an individual whose constitutional rights have been violated to have recourse against a municipality under § 1983, he must show that he was harmed by a municipal "policy" or "custom." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 690-91. A "policy" or "custom" cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*").

Here, however, the Complaint identifies no unconstitutional policy on the part of either municipal Defendant. That omission is fatal, at this juncture, to Plaintiff's Complaint. *Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 259 (N.D.N.Y. 2023) ("Plaintiff has not identified any formal town policy that has deprived [him] of equal protection."); *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 293 (N.D.N.Y. 2022) (dismissal required when complaint "does not allege the existence of any policy, practice, or custom from which [plaintiff's] alleged constitutional violation resulted.").

**\*7** Claims against the municipal entities, therefore, should be dismissed.

### G. Leave to Amend

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). "However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate." *Norwood v. Albany City Police Dep't*, 2019 WL 7593292, at \*2 (N.D.N.Y. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 5415873 (N.D.N.Y. Oct. 23, 2019). Here, for the reasons set forth above, Plaintiff's allegations that are barred by judicial immunity should be dismissed without leave to amend since no additional pleading could undue that immunity. Since the law is clear that the attorneys assigned to represent parties to state court litigation are not state actors, those claims too should be dismissed without leave to amend. Plaintiff could, perhaps, make factual allegations to establish a claim against the remaining Defendants and so those claims should be dismissed with leave to amend.

2025 WL 2722411

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED as set forth above**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[5]  If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 2722411

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2719776
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn Taylor GAMMONS, Plaintiff,

v.

Samantha Anna-Kay CODY et al., Defendants.

1:25-CV-941 (AJB/DJS)

|

Signed September 24, 2025

**Attorneys and Law Firms**

SHAWN TAYLOR GAMMONS, Plaintiff, Pro Se, 85 Hunter Avenue, Albany, NY 12206.

**ORDER ON REPORT & RECOMMENDATION**

Anthony J. Brindisi, United States District Judge:

 **\*1** On July 17, 2025, *pro se* plaintiff Shawn Taylor Gammons ("plaintiff") filed this 42 U.S.C. § 1983 action, purportedly on behalf of himself and his two minor children, against their mother and others involved in an ongoing custody proceeding in Greene County Family Court. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On September 2, 2025, U.S. Magistrate Judge Daniel J. Stewart granted plaintiff's IFP Application, Dkt. No. 2, and, after conducting an initial review of plaintiff's pleading, advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to amend. Dkt. No. 5.

First, Judge Stewart explained that plaintiff, as a non-lawyer, could not assert claims on behalf of his minor children in federal court. Dkt. No. 5. Second, Judge Stewart determined that any claims against judicial officers or staff, including defendants Tailleur, Richards, Wright, and Berg, must be dismissed because they were immune from suit under § 1983. *Id*. Third, Judge Stewart concluded that several of the remaining defendants were not state actors and therefore could not be sued under § 1983. *Id*. Fourth, as for defendant Caruso and defendants Columbia and Greene Counties, Judge Stewart found that plaintiff's complaint did not plausibly allege a § 1983 claim against these defendants. *Id*. Fifth, because plaintiff's federal claims were being dismissed, Judge Stewart recommended that jurisdiction over the state-law claims should be declined. *Id*. Sixth, and finally, Judge Stewart advised that plaintiff should be given *partial* leave to amend his complaint against the non-judicial and non-attorney actors. *Id*. at 16.

Plaintiff has lodged objections. Dkt. No. 6. There, plaintiff indicates that he would like to abandon his claims related to domestic relations law issues, but requests discovery into a long history of "court orders, records, and transcripts" that might establish that one or more of the judicial defendants are not, in fact, immune from suit. *See id*.

Upon *de novo* review, the R&R will be accepted and adopted. *See* 28 U.S.C. § 636(b). The requests identified in plaintiff's objections—including a possible stay for time to "gather all evidence possible"—are not bases on which to modify the R&R. As plaintiff acknowledges, it is usually inappropriate to seek relief in federal court on "domestic relations" matters. Indeed, the so-called "domestic relations exception" will often apply to deprive federal courts of the ability to hear matters that bear on those topics. *See, e.g.*, *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Even so, and as Judge Stewart found, it is possible that

2025 WL 2719776

plaintiff could plausibly allege a claim against one or more of the non-judicial, non-attorney defendants. Accordingly, plaintiff's complaint will be dismissed with partial leave to amend.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED with partial leave to amend;

**\*2** 3. Plaintiff's § 1983 claims against defendants Tailleur, Richards, Wright, Berg, Gamalski, Smith, Zacker, and Gross are DISMISSED without leave to amend;

4. Plaintiff's remaining claims are DISMISSED without prejudice;

5. Plaintiff shall have THIRTY DAYS from the date of this decision in which to file an amended complaint that conforms with the guidance in Judge Stewart's R&R and this Order;

6. If plaintiff timely files an amended complaint, the matter shall be returned to Judge Stewart for further action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the Clerk of the Court is directed to enter a judgment dismissing this action and close the file without further Order of the Court.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2719776

---

**End of Document**                                                                 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:26-cv-00534-AJB-CBF    Document 20    Filed 05/21/26    Page 113 of 116

Johnson v. City of New York, Not Reported in Fed. Rptr. (2023)

2023 WL 3607219

2023 WL 3607219
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Vandyke JOHNSON, Plaintiff-Appellant,

v.

CITY OF NEW YORK, N.Y.P.D. Officer Randazzo, Badge No. 959119, N.Y.P.D. Officer
Hotoniel Diaz, John Doe #1, John Doe #2, Racheal Garcia, Wandaly Torres, Diana Alama, CPS
Worker, David A. Hansell, Commissioner Administration for Children's Services, Jane Doe,
CPS Worker, Bronx Care Health System, Sheena Blaise, CPS Worker, Defendants-Appellees.

22-2096
|
May 24, 2023

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*;
Barbara Moses, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the
district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Vandyke Johnson, pro se, New York, NY.

FOR CITY DEFENDANTS-APPELLEES: Lorenzo Di Silvio (Tahirih M. Sadrieh, on the brief), for Hon. Sylvia O. Hinds-
Radix, Corporation Counsel of the City of New York, New York, NY.

FOR DEFENDANT-APPELLEE BRONX CARE: Judy C. Selmeci (Wilson Elser Moskowitz, on the brief), Edelman & Dicker
LLP, New York, NY.

PRESENT: GUIDO CALABRESI, EUNICE C. LEE, ALISON J. NATHAN, Circuit Judges.

**SUMMARY ORDER**

**\*1** Appellant Vandyke Johnson, proceeding *pro se*, challenges the district court's dismissal of, *inter alia*, malicious prosecution
and false arrest claims brought pursuant to 42 U.S.C. § 1983. Johnson also appeals the dismissal of his § 1983 claims against
Bronx Care Health System ("Bronx Care"), which he brought on the contention that doctors examined his children over his
objections and thereby violated both his and his children's constitutional rights. We assume the parties' familiarity with the
proceedings, which we discuss only as necessary to resolve this appeal.

In August 2019, Johnson was arrested after his stepdaughter filed a police report alleging physical violence by Johnson. Johnson
was arraigned on charges including third-degree assault and endangering the welfare of a child, and a criminal court order of
protection was issued prohibiting Johnson from contacting his stepdaughter. Shortly afterwards, based on these accusations, a
neglect petition was filed in Family Court, and a separate Family Court order of protection issued against Johnson. The Family
Court order of protection was reissued on November 14, 2019, and was valid through February 24, 2020. Johnson contends
that the criminal court order of protection expired when his criminal case was dismissed on November 25, 2019, after which he
was informed by his attorneys that there was no longer an active order of protection against him; the attorneys were incorrect,
however, as the Family Court order remained in effect.

Johnson was arrested twice for violating the Family Court order of protection. The first arrest occurred on November 25, 2019, only a few hours after his criminal case was dismissed, when he was arrested at home for violating the order of protection. Johnson claimed that the police were shown, and relied on, the Family Court order of protection, which Johnson has variously claimed he was not aware of or that it expired November 14, 2019. Johnson was arrested the second time for violating the Family Court order of protection on February 12, 2020, after attempting to pick up his youngest child at school. Eventually, all the charges stemming from the various arrests were dismissed, and the neglect petition filed in Family Court was withdrawn.

As to the claims against Bronx Care, Johnson contends that, following the arrest of his wife for child neglect on February 7, 2020, his children were taken to Bronx Care and, without Johnson's permission and over his objections, were examined by hospital staff in what Johnson describes as an invasive manner.

Johnson sued the City of New York, the Commissioner of the New York City Administration for Children's Services ("ACS"), ACS employees, and individual police officers (the "City defendants") for, as relevant here, false arrest and malicious prosecution under 42 U.S.C. § 1983. Johnson also sued Bronx Care for violating his and his minor children's Fourth Amendment and due process rights. After permitting three amendments to Johnson's original complaint, the district court granted the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [1] Johnson appealed.

[1]   Johnson's state law claims were dismissed without prejudice.

**\*2**  As an initial matter, and despite Bronx Care's argument to the contrary, this Court has jurisdiction to hear all parts of this case. Bronx Care contends that Johnson's notice of appeal was defective in part because it failed to identify the earlier, nonfinal order dismissing Johnson's claims against Bronx Care. However, Johnson's notice of appeal did identify the district court's final order (doc. 97), which Johnson correctly described as the decision dismissing the remaining defendants and the case. So long as it identifies a final order or judgment, a notice of appeal is limited to certain specified orders *only* if the appellant "expressly stat[es]" that he intends for it to be so limited. Fed. R. App. P. 3(c)(5)(A), (6). Because Johnson's notice contained no express language limiting its reach, we have appellate jurisdiction over nonfinal orders, like the one pertaining to Bronx Care, that merged into and became appealable upon entry of final judgment. *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013).

This Court "review[s] the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

On appeal, Johnson raises three arguments: (1) under *Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999), he had standing to bring claims against Bronx Care on behalf of his children; (2) there was no probable cause to arrest and prosecute him and thus that he stated both malicious prosecution and false arrest claims; and (3) that the cases against him terminated in his favor. We address each in turn.

Beginning with the claims against Bronx Care, Johnson is correct that he retains a "constitutionally protected liberty interest in the care, custody and management of [his] children." *Tenenbaum*, 193 F.3d at 593. But, as the district court determined, it is a "well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child," with certain exceptions not relevant here. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Because Johnson is not an attorney, he could not assert violations of his children's constitutional rights against Bronx Care. The district court properly dismissed these claims without prejudice. *See Berrios v. N.Y.C. House. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (reasoning that court may not "make a merits determination of claims filed on behalf of a minor or incompetent person who is not properly represented").

Johnson's claims that Bronx Care violated his own constitutional due process rights are not sufficiently pleaded. Johnson merely asserted that Bronx Care created an unconstitutional policy of interviewing and examining children without parental consent. But Johnson did not plead any facts in support of this claim, and legal conclusions alone do not suffice to state a valid constitutional claim. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022).

Next, against the City defendants, Johnson alleged false arrest and malicious prosecution, for both the criminal proceedings against him as well as the neglect petition filed against him in Family Court. We assume, without deciding, that a malicious prosecution claim can be premised on a neglect petition.

"Probable cause is a complete defense to a constitutional claim for false arrest," and "continuing probable cause is a complete defense" to a tort claim for malicious prosecution. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Id.* (internal quotation marks omitted). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (internal quotation marks omitted). "[P]robable cause must be shown as to each crime charged in the underlying criminal action." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).

**\*3** Johnson argues that his November 2019 and February 2020 arrests were unsupported by probable cause, but we do not agree. [2] Johnson claimed that the November 2019 arrest was unsupported by probable cause because the police relied on either an order of protection he had never received or on an expired version of the Family Court order. There is no dispute, however, that the Family Court order was actually in effect and an arrest premised on it would be valid even if the officers were shown an older, expired copy of the order at some point prior to the arrest. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.... [P]robable cause does not require absolute certainty." (internal quotation marks and citations omitted)). Moreover, the ACS employee's report to the police of Johnson's violation of the order of protection could support a valid determination of probable cause so long as there was no reason to doubt her veracity. *See id.* Regarding the February 2020 arrest, he claimed that school officials falsely reported to police that he was in violation of the Family Court order of protection. Again, however, Johnson did not dispute that the Family Court order was still in effect, and the reports of the school officials, even if later determined to be false, could support a valid determination of probable cause so long as there was no reason to doubt the officials' veracity. *See id.*

2    To the extent Johnson now argues that the officers lacked probable cause for the initial August 2019 arrest, the allegations as pleaded fail to make out a lack of probable cause. According to Johnson's own complaint, his stepdaughter filed a police report alleging Johnson physically harmed her. This was sufficient to support the arrest. *See Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

Claims for malicious prosecution require a plaintiff to allege, on top of lack of probable cause, "that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted). Johnson has not pleaded that any of the defendants acted with malice when instituting the criminal or neglect proceedings. Thus, the district court correctly dismissed Johnson's § 1983 malicious prosecution claims. Because Johnson failed to plead two necessary elements for the malicious prosecution claim—actual malice and lack of probable cause—we need not reach his arguments regarding favorable termination.

We have considered Johnson's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

---

2023 WL 3607219

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 3607219

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.